**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

**No. 94-60483**

**JENNIFER WAYMIRE,**

**Plaintiff-Appellant,**

**VERSUS**

**HARRIS COUNTY, TEXAS, ET AL.,**

**Defendants-Appellees.**

Appeal from the United States District Court
for the Southern District of Texas

June 13, 1996

Before POLITZ, Chief Judge, and HILL[1] and DeMOSS, Circuit Judges.

DeMOSS, Circuit Judge:

Plaintiff-Appellant Jennifer Waymire appeals from a district court grant of judgment as matter of law in favor of Defendant-Appellee Harris County on her claim of sex discrimination. Finding that Waymire failed to establish a hostile work environment claim because the county took prompt remedial action, we affirm the district court's grant of judgment as a matter of law.

### BACKGROUND

Jennifer Waymire, a jailer for Harris County (the "county"),

---

[1]Circuit Judge of the Eleventh Circuit, sitting by designation.

alleges that she was discriminated against because another jailer, Eric Smith, had an inmate draw an obscene picture of her. Smith then showed the picture to other jail employees.

On February 28, 1992, Eric Smith was working on the sixth floor of the newly opened 701 Jail in Houston.[2] Smith was approached by an inmate who showed him several landscapes which he had drawn on handkerchiefs. Smith, who had taken several art classes in the past, asked the inmate if he could draw people. The inmate replied that he could, so Smith challenged him to draw a portrait in 15 minutes. The inmate asked what he should draw, and Smith said to draw a female deputy. Then Smith said to draw an inmate with a jumpsuit on, shooting craps on the dayroom table. Smith further instructed that the portrait should have a caption, "anything that's funny."

A short while later, the inmate returned with his 'artwork.' The drawing depicted a male inmate about to engage in sexual intercourse with a female deputy. The inmate was standing behind the deputy, jail jumpsuit at his feet, penis erect. The female deputy was on her hands and knees on the dayroom table. The caption above the inmate read, "Dam [*sic*] Baby, you have some good pussy," while the female deputy was saying "Hurry up and get that Nut before the Sgt. come [*sic*]." In the picture, the deputy's uniform was on the floor and attached to the belt was a flashlight.

Smith took the picture from the inmate. He did not, however,

---

[2]The jail was called the 701 jail because it was located at 701 North San Jacinto in Houston.

report the inmate's conduct, even though the obscene picture was contraband. Rather than turning the picture over to proper jail authorities, as regulations require, Smith took the picture home. Smith violated jail policies by accepting the picture from the inmate. Two days later Smith brought the picture back to work and showed it to other jailers at roll call.

That day several jailers approached Waymire and told her about the handkerchief. They thought that the drawing was of her, because the deputy in the picture had a flashlight, and Waymire was the only female deputy who wore a flashlight on her belt. She was understandably upset about the drawing and asked Smith if she could see it. He was initially reluctant to show it to her, but finally relented. Waymire was disgusted by the picture.

Sergeant Mayberry, Smith's and Waymire's supervisor, was present when Waymire saw the picture. He confiscated the drawing and orally reprimanded Smith. Later, Sergeant Mayberry issued a written reprimand to Smith. Sergeant Mayberry immediately began an investigation of the incident. Within a week he wrote a report of the incident and forwarded it to his immediate supervisor.

Within a month, the matter reached Chief Thomas, second in command of the Sheriff's Department, who decided to fire Smith. Chief Thomas initially prepared a letter firing Smith, but changed his mind. Instead, Chief Thomas decided to wait for the results of an investigation by the county's equal employment opportunity compliance office. That report determined that Smith had not harassed Waymire. Chief Thomas then instructed Captain Adams, the

3

head of the 701 Jail, to reprimand Smith instead. Captain Adams gave Smith a formal letter of reprimand, which was placed in his permanent file. In the letter, Smith was warned that further conduct of this nature could lead to his dismissal.

In late April 1992, Waymire filed a claim of discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), alleging that she had been sexually harassed. In August 1992, six months after the picture incident, Waymire resigned from the Sheriff's Department.

In May 1993, Waymire filed suit against Harris County, alleging that (1) she was discriminated against based on sex because of a hostile work environment and (2) Harris County retaliated against her for filing a complaint with the EEOC, both in violation of Title VII of the Civil Rights Act of 1964, codified at 42 U.S.C. § 2000e-2, *et seq*. Specifically, she alleges that: (1) a lieutenant in the jail told her that he was going to make her life hell and (2) she was often trapped in elevators with inmates,[3] putting her in danger.

A jury found in favor of Waymire on her claim of sexual harassment, awarding her $38,375. The jury also found that Waymire was constructively discharged. The jury, however, rejected her claim of retaliation. The county moved for judgment as a matter of law at the close of Waymire's case-in-chief, and renewed that motion at the close of all evidence. After the verdict, the county

---

[3]The elevators in the jail are not operated by the individual in the elevator, but rather by other jailers.

again moved for judgment as a matter of law pursuant to Rule 50 of the Federal Rules of Civil Procedure. The district court granted that motion and judgment was rendered in favor of the county. Waymire filed a timely notice of appeal.

## STANDARD OF REVIEW

In reviewing a district court's grant of judgment as a matter of law we apply the same standard of review as the district court. *Robertson v. Bell Helicopter Textron, Inc.*, 32 F.3d 948, 950 (5th Cir. 1994). We must consider all the evidence presented in the light most favorable to the non-movant, Waymire. *Id*. "The motion is properly granted when the facts and inferences point so strongly in favor of the movant that a rational jury could not arrive at a contrary verdict." *London v. MAC Corp. of America*, 44 F.3d 316, 318 (5th Cir. 1995). "If there is substantial evidence -- that is, evidence of such quality and weight that reasonable and fair-minded jurors might reach a different conclusion -- then the motion should have been denied." *Robertson*, 32 F.3d. at 951.

## DISCUSSION

To state a claim under Title VII for sex discrimination based on a theory of a hostile work environment, a plaintiff must prove: (1) that she belongs to a protected class; (2) that she was subject to unwelcome harassment; (3) that the harassment was based on sex; (4) that the harassment affected a term, condition or privilege of employment; and (5) that the employer knew or should have known about the harassment and failed to take prompt remedial action. *Weller v. Citation Oil & Gas Corp.*, 1996 WL 257572, *18 (5th Cir.

5

June 3, 1996); *Nash v. Electrospace System, Inc.*, 9 F.3d 401, 403 (5th Cir. 1993). The district court granted the county's motion for judgment as a matter of law because it determined that no rational juror could find that elements four and five were met. After a detailed review of the record, we agree with the district court that no rational juror could find that the county failed to take prompt remedial action. Because the county's prompt remedial action protects it from liability, we need not address whether the harassment affected a term, condition or privilege of employment, or whether Waymire was constructively discharged.

In the recent case of *Carmon v. Lubrizol Corp.*, 17 F.3d 791, 795 (5th Cir. 1994), we found that an employer took prompt remedial action because "[i]t took the allegation seriously, it conducted prompt and thorough investigations, and it immediately implemented remedial and disciplinary measures based on the results of such investigations." These actions, we said, are "what a company *ought* to do when faced with allegations that an employee has been subjected to sexual harassment. . . ." *Id*. (emphasis in original).

These actions are what the county did when it learned of the drawing. As soon as Sergeant Mayberry discovered the picture, he confiscated it and orally reprimanded Smith. Sergeant Mayberry then filed a written report reprimanding Smith, and began an investigation of the incident. Within a week of discovering the drawing, Sergeant Mayberry: (1) interviewed Waymire regarding the drawing; (2) interviewed the inmate who drew the picture; and (3) obtained reports from nine deputies and jailers who knew of the

6

drawing. Sergeant Mayberry then sent a six page report of the incident to his supervisor, who forwarded the report to the commander of the jail, Captain Adams. Within a month of the incident the number two person in the Sheriff's Department, Chief Thomas, decided to fire Smith. Chief Thomas later delayed that decision until the county's equal employment opportunity compliance officer completed her investigation of the incident. After that investigation determined that Smith had not harassed Waymire, Chief Thomas decided not to fire Smith, and instead Smith was issued a formal letter of reprimand by Captain Adams. In the letter, issued three months after the drawing was discovered, Smith was warned that further violations could lead to termination.

Waymire argues that this response was not prompt remedial action. Specifically, Waymire contends the county's response was deficient because: (1) Sergeant Mayberry did not wait for Waymire's written statement before writing his report; (2) in his report, Sergeant Mayberry concluded that Waymire's allegations were "totally unfounded and with[out] substance, retaliatory fabricated and vindictive in nature"; (3) it took over three months before the county took final action on the incident; and (4) Captain Adams merely reprimanded Smith instead of firing him. We will address each of these objections in turn.

The fact that Sergeant Mayberry did not wait for Waymire's written statement does not effect the County's prompt remedial actions. Sergeant Mayberry had spoken at length with Waymire and knew her views on the situation. He knew that Waymire was offended

7

by the drawing and would only be satisfied if Smith were fired. These sentiments were incorporated into his report. Therefore, the absence of Waymire's written statement did not affect the investigation.

We are troubled by Sergeant Mayberry's comments in the report that Waymire's actions were without substance, retaliatory, fabricated and vindictive. However, the issue is not whether *Sergeant Mayberry* took prompt remedial action, but whether *the county* did so. The county seriously considered firing Smith, and ultimately formally reprimanded him, placing a letter in his permanent file. It is important to note, also, that even though Sergeant Mayberry thought Waymire vindictive and her charges without substance, he did twice reprimand Smith and filed the report. Sergeant Mayberry may have expressed serious doubts about Waymire's claim, but he took it seriously enough to perform a detailed investigation and write a lengthy report.

The fact that the county's investigation took three months does not cause it to fail the "promptness" requirement. The investiga-tion originally moved quickly. Smith was reprimanded twice on the day of discovery, and a report was issued within a week. Within a month, the second in command of the Sheriff's Department made a preliminary decision. The only delay occurred while the department waited for the report by the county's equal employment opportunity compliance officer. We have said before that in analyzing the promptness of response it is important to keep in mind the entity's "lines of command [and] organization

8

format." ***Dornhecker v. Malibu Grand Prix Corp.***, 828 F.2d 307, 309 (5th Cir. 1987). Considering the Sheriff's Department's and county's lines of command and organization format, the county's response, even with the three month delay, was prompt.

It is appropriate that the county reprimanded Smith rather than firing him. As we have said, "Title VII does not require that an employer use the most serious sanction available to punish an offender, particularly where, as here this was the first documented offense by [the] individual employee." ***Landgraf v. USI Film Products***, 968 F.2d 427, 430 (5th Cir. 1992). When the incident took place, Smith was a 21 year old who had been a jailer for less than six months. By accepting the obscene drawing from the inmate, taking it home, and showing it around, Smith exercised extremely poor judgment. However, that one instance of poor judgment does not require that Smith be fired. The county's decision to reprimand Smith was a prompt remedial measure. Waymire testified that Smith never harassed her again, and the record does not show that he ever harassed anyone else. Based on these facts, the county's actions were sufficient to remedy any hostile work environment.

## CONCLUSION

Let us make clear that we do not condone Smith's actions. The picture the inmate drew was vile, disgusting and obscene. The fact that it shows an inmate engaging in sexual intercourse with a jailer is reprehensible. Upon discovering the drawing, Smith's proper course of action would have been to report the inmate and

9

turn in the drawing.

Smith, however, is not a defendant in this action. Title VII places liability on *employers*, not employees. Therefore, it is the county's conduct which we are judging. As discussed above, the county responded appropriately to the drawing and to Smith's conduct. Immediate action was taken and Smith was severely reprimanded. While Smith did not receive the ultimate sanction, dismissal, he was appropriately disciplined.

Because we conclude as a matter of law that the county, upon learning of the drawing, took prompt remedial action, Waymire has failed to establish an essential element of her hostile work environment cause of action. Therefore, the district court's judgment as a matter of law in favor of the county is **AFFIRMED**.