Carolyn S. WATTS, Plaintiff,

v.

The KROGER CO., and Arthur
Bullington, Defendants.

Civil Action No. 1:95CV341–D–D.

United States District Court,
N.D. Mississippi,
Eastern Division.

Feb. 3, 1997.

Jim D. Waide, Grant M. Fox, Tupelo, MS, for plaintiff.

William T. Siler, Phelps Dunbar, Jackson, MS, for defendants.

## MEMORANDUM OPINION

DAVIDSON, District Judge.

This cause comes before the court upon the motion of the defendants for summary judgment as to the plaintiff's Title VII claims. The defendants have also filed a motion to strike portions of the plaintiff's affidavit and certain unsworn statements. The plaintiff filed suit against the defendants alleging that she had been sexually harassed to such a degree that she was forced to work within a hostile environment. She also claims the defendants retaliated against her in violation of Title VII.[1] The defendants filed a motion requesting a judgment as a matter of law against the plaintiff's federal claims. The plaintiff has responded and this matter is ripe for determination.

## FACTUAL BACKGROUND [2]

Plaintiff Carolyn S. Watts began working for defendant Kroger Company ("Kroger") in 1990 at the defendant's Southaven, Mississippi grocery store. Watts Depo., Sept. 12, 1996, at 31. She was initially employed part-time in the flower shop and eventually transferred to the produce department. Id. Watts' supervisors in the produce department were John Moore, for part of 1990, Glen Rice, from 1990 to 1993, and defendant Arthur Bullington from 1993 to November 1995. During her employment with Kroger, Watts began having an extramarital affair with Glen Rice and moved out of her home for a short while in May 1994. Id. at 34–35, 39–40. Defendant Bullington knew of the plaintiff's relationship and harassed her about it on certain occasions. Id. at 37–38, 62–65, 68.

1. The plaintiff's complaint also contains claims for violations of state law. However, the defendants did not move for a judgment as a matter of law as to those claims, but only requested that they be dismissed if the court granted the summary judgment motion as to the plaintiff's federal claims. 28 U.S.C. § 1367(c)(3).

2. In a motion for summary judgment, the facts must be construed in the light most favorable to the non-moving party. Matagorda County v. Russell Law, 19 F.3d 215, 217 (5th Cir.1994). The court's recitation of the facts in this case reflects this rule.

The plaintiff alleges that defendant Bullington began sexually harassing her when he moved to Kroger's Southaven store. He would ask the plaintiff to "check me, please," requesting that the plaintiff touch Bullington's penis to see if he needed to use the restroom. *Id.* at 58, 61. He asked whether the plaintiff was going to "take him into the cooler"—a reference to making out in the cooler—and whether plaintiff was "going to give him some before he left Southaven." *Id.* at 58. On one occasion, Bullington grabbed the plaintiff's buttocks· and on two or three occasions he rubbed up against the plaintiff as he passed between her and a dolly while she worked. *Id.* at 77–79. Bullington also stated to a co-employee, Tony Castallucio, that he wanted to "eat [the plaintiff's] pie" and that he had "some meat" for her. Watts Aff., ¶ VII. The plaintiff further alleges that Bullington would follow her around the store calling her a "homewrecker" and "homeless," in reference to her personal situation at home. *Id.* at 62–65.

On July 7, 1994, after Bullington had been particularly persistent in making the "homewrecker" comment, the plaintiff reported him to the store manager, Ricky Hayles. *Id.* at 59, 62–63, 67. She asked that Hayles instruct Bullington to refrain from making comments about her personal life. *Id.* The plaintiff did not make a report of any sexual harassment at this time. *Id.* at 62, 67, 79–82. Hayles spoke with Bullington and instructed him to leave the plaintiff alone. Watts admits that no sexual harassment occurred after her meeting with Mr. Hayles on July 7. *Id.* at 59, 69–70, 118. However, she alleges that Kroger retaliated against her by changing her schedule, assigning her duties which she had not normally been asked to perform, making her mop the floor and clean the chrome in the produce department and requiring her to check with Bullington before she took any breaks. Watts Aff., Dec. 8, 1996.

On July 19, 1994, Watts filed a grievance with her union for sexual harassment. *Id.* at 153–54. Kroger investigated the complaint, but determined that Watts had not substantiated her claim of sexual harassment. Humbles Depo., Sept. 13, 1996, at 29, 34. Despite this finding, Kroger verbally reprimanded defendant Bullington and offered to transfer him or the plaintiff to another store. Humbles Depo., Sept. 13, 1996 at 36–37; Watts Depo., Sept. 12, 1996, at 107–108. Kroger also offered to transfer the plaintiff to another department within the Southaven store. Watts Depo., Sept. 12, 1996, at 107. Watts filed a complaint with the EEOC on November 2, 1994, alleging that defendant Bullington sexually harassed her by subjecting her to a hostile work environment. In addition, she claimed Bullington and Kroger management retaliated against her in violation of Title VII. Watts then filed suit in federal court making those same allegations along with claims under state law.

## *LEGAL DISCUSSION*

### I. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party seeking summary judgment carries the burden of demonstrating that there is an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Vera v. Tue*, 73 F.3d 604, 607 (5th Cir.1996). Once a properly supported motion for summary judgment is presented, the burden shifts to the non-moving party to set forth specific facts showing that· there is a genuine issue for ·trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); *Brothers v. Klevenhagen*, 28 F.3d 452, 455 (5th Cir.1994). "Where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Federal Sav. & Loan Ins. v. Kralj*, 968 F.2d 500, 503· (5th Cir. 1992). The facts are reviewed drawing all reasonable inferences in favor of the party opposing the motion. *Banc One Capital Partners Corp. v. Kneipper*, 67 F.3d 1187,

1198 (5th Cir.1995); *Matagorda County v. Russell Law*, 19 F.3d 215, 217 (5th Cir.1994).

## II. MOTION TO STRIKE

### A. Affidavit Paragraph III

■ The defendants have moved to strike the plaintiff's affidavit and certain unsworn statements attached to her affidavit. The defendants first request that paragraph III of the affidavit be stricken. That paragraph provides:

> While he was my supervisor Mr. Bullington sexually harassed me and subjected me to a hostile work environment.

Watts Aff., ¶ III. The defendants contend that the plaintiff is incompetent to testify as to this legal conclusion. The plaintiff responds by conceding that an affidavit must be based on personal knowledge pursuant to Rule 56(e) of the Federal Rules of Civil Procedure, but she submits that personal knowledge " 'includes inferences from sense, as well as the sense data themselves.' ... The statement offered by Ms. Watts was based on her personal knowledge of the Defendants' acts and her sense of what those acts constituted." Plaintiff's Response in Opposition of Motion to Strike at 1–2 (citing *Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568, 1572 (7th Cir.1989)). The plaintiff also proposes that her statement is admissible as a lay opinion under Rule 701 of the Federal Rules of Evidence.[3]

The court is of the opinion that the statement should be stricken. It is a broad, conclusory statement and "[c]onclusory assertions cannot be used in an affidavit on summary judgment." *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir.1992). In addition, part of the test for admissibility of a lay witness opinion under Rule 701 is that the

opinion be "helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." Fed.R.Evid. 701. Ms. Watts' broad personal opinion that she was subjected to sexual harassment is neither very helpful nor relevant to a legal determination of that same issue.[4] On the other hand, the factual incidents on which she bases her personal opinion are relevant and helpful to the legal determination. The plaintiff set forth in her affidavit the factual premises for her conclusory statement and "[t]he opinion rule operates to prefer the more concrete description to the less concrete, the direct form of statement to the inferential." *Lubbock Feed Lots, Inc. v. Iowa Beef Processors, Inc.*, 630 F.2d 250, 263 (5th Cir.1980).

Furthermore, Rule 56(e) states that, with regard to a summary judgment motion, supporting or opposing affidavits "shall set forth such facts as would be admissible in evidence ..." Fed.R.Civ.P. 56(e). In all likelihood, Ms. Watts would not be allowed to testify at trial as to the assertion contained in paragraph III of her affidavit. If her statement would be inadmissible at trial, it may not be used to create a genuine issue of material fact with regard to a summary judgment motion. *Salas*, 980 F.2d at 305 ("Evidence inadmissible at trial cannot be used to avoid summary judgment."). Paragraph III of the plaintiff's affidavit shall be stricken.[5]

### B. Affidavit Paragraph VII

■ The defendants also ask that Paragraph VII of the affidavit be stricken on the basis that it contains inadmissible hearsay. It provides:

> I was also told by Tony Castallucio that Mr. Bullington said he wanted to "eat my pie" and that he had "some meat for me."

*Lubbock Feed Lots, Inc. v. Iowa Beef Processors, Inc.*, 630 F.2d 250, 263 (5th Cir.1980); Fed. R.Evid. 704.

---

3. Rule 701 provides:
   If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.
   Fed.R.Evid. 701.

4. Although the statement embraces an ultimate issue, that fact does not affect its admissibility.

5. The ruling of this court would not change with the admission of this statement into evidence. As set out *infra*, the court's decision is not premised on whether the plaintiff actually was sexually harassed, but whether the defendant Kroger insulated itself from liability by taking prompt remedial action.

Watts Aff., ¶ VII. The plaintiff contends that both Mr. Bullington's alleged statement to Mr. Castallucio and Mr. Castallucio's statement to the plaintiff may be classified as admissions by a party-opponent and that they are thus admissible. The alleged statement of Mr. Bullington to Tony Castallucio may properly be classified as an admission by a party opponent under Rule 801(d)(2)(A). It is offered against defendant Bullington and is allegedly the defendant's own statement. Fed.R.Evid. 801(d)(2)(A). The rule makes clear that any such statement is not considered hearsay.

■ The plaintiff submits that Mr. Castallucio's statement to her may also be characterized as an admission by a party-opponent under Rule 801(d)(2)(D). That rule provides that a statement offered against a party is not hearsay if it was "by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship." Fed. R.Evid. 801(d)(2)(D). The defendants concede that Mr. Castallucio was a Kroger employee during the relevant time in question. Rebuttal Mem. in Support of Defendants' Motion to Strike at 3.

However, the rule also requires the plaintiff to demonstrate that the statement concerned "a matter within the scope of the agency or employment." *Corley v. Burger King Corp.*, 56 F.3d 709, 710 (5th Cir.1995) (citing *Nekolny v. Painter*, 653 F.2d 1164, 1171 (7th Cir.1981) ("After the fact of the agency is established, Rule 801(d)(2)(D) requires only that the statement 'concern a matter within the scope of the agency or employment.'"), *cert. denied*, 455 U.S. 1021, 102 S.Ct. 1719, 72 L.Ed.2d 139 (1982)). It is the plaintiff's burden to demonstrate that the prerequisites under the rule have been met. *See Litton Sys., Inc. v. American Tel. & Tel. Co.*, 700 F.2d 785, 816–17 (2d Cir.1983) ("In any event, [proponent of notes] made no attempt at trial to lay the necessary foundation for the admission of the notes under 801(d)(2)(D) or any other rule, and simply

argues here that the terms of 801(d)(2)(D) were satisfied."); *Tucker v. Norfolk & Western Ry. Co.*, 849 F.Supp. 1096, 1098–99 (E.D.Va.1994) (noting that statements might, "upon establishment of a sufficient foundation by plaintiff, be admissible under F.R.E. 801(d)(2)(D) as admissions by a party-opponent."). The court is of the opinion that Mr. Castallucio's statement to the plaintiff concerning comments about the plaintiff made by the plaintiff's supervisor "concern a matter within the scope of the agency or employment" as set forth by the rule. *NLRB v. Cal–Maine Farms, Inc.*, 998 F.2d 1336, 1343 (5th Cir.1993). As such, paragraph VII of the plaintiff's affidavit shall be allowed to stand.

## C. Affidavit Paragraphs X and XII

■ The defendants have also moved to strike certain portions of paragraphs X [6] and XII of the plaintiff's affidavit. The offending sentence in paragraph X reads,

Mr. Bullington changed my schedule in retaliation for complaining to Mr. Hayles.

Watts' Aff., ¶ X. The challenged sentence in paragraph XII reads,

Mr. Hayles did these things [7] in order to frustrate me and force me to quit for complaining to the union.

Watts' Aff., ¶ XII. The defendants argue that these statements are not matters *known to the affiant* as Rule 56(e) requires and they must therefore be stricken. It is undisputed that Rule 56 requires an affiant to have personal knowledge of the facts to which he or she is attesting. As noted *supra*, an affiant will not be allowed to circumvent the strictures of trial testimony by testifying through an affidavit. If the testimony would be inadmissible at trial, it generally is not proper fodder for an affidavit.

Furthermore, the Fifth Circuit has held that

Conclusory statements in an affidavit do not provide facts that will counter summary judgment evidence, and testimony

---

**6.** Although the defendants referenced paragraph VII for this request, the cited language was actually culled from paragraph X.

**7.** The plaintiff complained that Mr. Hayles made her work the check out line without training, mop the floor and clean the chrome in the store, among other things. Watts' Aff., ¶ XII.

based on conjecture alone is insufficient to raise an issue to defeat summary judgment.

> Lechuga v. Southern Pac. Transp. Co., 949 F.2d 790, 798 (5th Cir.1992) (internal footnote omitted). The statements targeted by the defendants are conclusory, unspecific and insufficient to raise a genuine issue of material fact. See, e.g., Hibernia Nat'l Bank v. Carner, 997 F.2d 94, 98 (5th Cir.1993) ("[A] summary assertion made in an affidavit is simply not enough evidence to raise a genuine issue of material fact.") (citing cases). Inasmuch as the plaintiff has properly included within her affidavit specific factual allegations upon which she bases these broad assertions, the court is of the opinion that the speculative statements at issue are not only improper, but unnecessary. They shall also be stricken.[8]

### D.  Unsworn Statements

■ The defendants have also requested that the unsworn statements attached to the plaintiff's affidavit as exhibits F–1 through F–5 be stricken. These hand-written statements were collected from the plaintiff's co-workers and have been neither sworn to nor notarized.[9] The defendants also submit that they contain inadmissible hearsay. Without addressing the hearsay contention, the court is of the opinion that the unsworn statements do not suffice for Rule 56(e) purposes. The Fifth Circuit addressed a similar issue in Duplantis v. Shell Offshore, Inc., 948 F.2d 187 (5th Cir.1991). In that case, the plaintiffs attempted to avoid summary judgment by attaching as an exhibit to their response a letter from their expert witness. Duplantis, 948 F.2d at 191. The Duplantis Court held that the proffered evidence failed under Rule 56 because "it [was] unsworn [and] not even in the form of an affidavit." Id. The court noted that the law is well settled "that a plaintiff must respond to an adequate motion for summary judgment with admissible evidence." Id.

After noting that the Supreme Court indicated in Celotex Corp. v. Catrett[10] that it might relax the evidentiary strictures for a summary judgment motion, the Fifth Circuit affirmed its interpretation that Celotex did not alter the settled law that

> Rule 56(e) requires the adversary to set forth facts that would be admissible in evidence at trial. Material that is inadmissible will not be considered on a motion for summary judgment because it would not establish a genuine issue of material fact if offered at trial and continuing the action would be useless.

> Duplantis, 948 F.2d at 192 (quoting Geiserman v. MacDonald, 893 F.2d 787, 793 (5th Cir.1990)). While the plaintiff need not necessarily depose her own witnesses,[11] only the documents enumerated in Rule 56(c), such as "answers to interrogatories, and admissions on file, together with affidavits," will suffice when opposing a properly supported motion for summary judgment. Id.; Fed.R.Civ.P. 56(c); see also United States v. Menendez, 48 F.3d 1401, 1414 (5th Cir.1995) (requiring summary judgment evidence that would sustain a finding at trial); Nowlin v. Resolution Trust Corp., 33 F.3d 498, 504–05 (5th Cir. 1994) ("Rule 56(e) . . . requires the nonmov-

---

8.  The court notes again that the admission of these statements into evidence would not change the court's ruling on this summary judgment motion. As set out infra, even if Bullington did change the plaintiff's schedule in retaliation for her complaining to Mr. Hayles, the facts are undisputed that the plaintiff did not engage in any activity protected under Title VII until after her schedule was changed. The plaintiff did not complain of sexual harassment when she confronted Mr. Hayles; thus, she was not engaged in a protected activity when she did so. Retaliation based on her meeting with Mr. Hayles is not actionable under Title VII. Further, the petty complaints regarding Mr. Hayles' alleged actions are insufficient as a matter of law to constitute "adverse employment action." As such, even if a genuine issue of material fact exists as to the causal relationship between the plaintiff's protected activity and Mr. Hayles' actions, the plaintiff suffered no adverse employment action. She has failed to state a claim for retaliation as a matter of law.

9.  The court also notes that the declarants did not comply with the strictures set forth by federal law for unsworn declarations. See 28 U.S.C. § 1746.

10.  477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

11.  See Celotex, 477 U.S. at 324, 106 S.Ct. at 2553.

ing party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' ") (quoting *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553); *Galindo v. Precision American Corp.,* 754 F.2d 1212, 1216 (5th Cir.1985) (noting necessity of opposing affidavits "or other competent evidence"). Because the unsworn statements are not competent evidence before this court, they may not be considered in this motion for summary judgment. The unsworn statements attached to the plaintiff's affidavit shall be stricken.

### III. TITLE VII CLAIMS AGAINST DEFENDANT BULLINGTON

The defendants submit that the plaintiff's Title VII claims against defendant Bullington must be dismissed because he is not an "employer" as defined by 42 U.S.C. 2000e(b). The plaintiff does not dispute this contention and confesses her Title VII claims as against defendant Bullington individually. Plaintiff's Mem. in Opp. to Summary Judgment Motion at 8–9. As such, the court shall dismiss the plaintiff's claims arising under Title VII as against defendant Bullington. *Stults v. Conoco, Inc.,* 76 F.3d 651, 655 (5th Cir.1996); *Grant v. Lone Star Co.,* 21 F.3d 649, 651–53 (5th Cir.), *cert. denied,* 513 U.S. 1015, 115 S.Ct. 574, 130 L.Ed.2d 491 (1994).

### IV. TITLE VII SEXUAL HARASSMENT CLAIMS AGAINST DEFENDANT KROGER

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.,* prohibits discrimination "against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's ... sex." 42 U.S.C. § 2000e–2(a)(1). The plaintiff charges that defendant Kroger, through the actions of defendant Bullington, created a hostile environment in which the plaintiff was forced to work. "Hostile work environment" sexual harassment occurs when an employer's conduct "has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive environment." *Meritor Sav. Bank v. Vinson,* 477 U.S. 57, 65, 106 S.Ct. 2399, 2404, 91 L.Ed.2d 49 (1986). The offensive action must create an environment hostile or abusive to the reasonable person. *Weller v. Citation Oil & Gas Corp.,* 84 F.3d 191, 194 (5th Cir.1996). Whether an environment meets this criteria depends upon the "totality of the circumstances." *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 22, 114 S.Ct. 367, 371, 126 L.Ed.2d 295, (1993); *DeAngelis v. El Paso Municipal Police Officers Ass'n,* 51 F.3d 591, 594 (5th Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 473, 133 L.Ed.2d 403 (1995). To maintain a workplace sexual harassment claim, Watts must demonstrate that

(1) she belongs to a protected class;

(2) she was subject to unwelcome sexual harassment;

(3) the harassment was based on sex;

(4) the harassment affected a term, condition, or privilege of employment (*i.e.,* that the harassment was sufficiently pervasive or severe to create an abusive work environment); and

(5) the employer knew or should have known of the harassment and failed to take prompt remedial action.

*Hirras v. National R.R. Passenger Corp.,* 95 F.3d 396, 399 (5th Cir.1996) (citing *Jones v. Flagship Int'l,* 793 F.2d 714, 719–20 (5th Cir.1986), *cert. denied,* 479 U.S. 1065, 107 S.Ct. 952, 93 L.Ed.2d 1001 (1987)). While the plaintiff must prove each element of the *prima facie* case by a preponderance of the evidence to prevail at trial, a genuine issue of material fact as to each element will preclude an award of summary judgment. *Waltman v. International Paper Co.,* 875 F.2d 468, 477 (5th Cir.1989) (citing *Thornbrough v. Columbus & Greenville R.R.,* 760 F.2d 633, 640–41 (5th Cir.1985)).

When an employer promptly takes steps which are effective in freeing the complaining employee from all alleged sexual harassment, the employer may not be held liable under a hostile environment theory. *Waymire v. Harris County, Texas,* 86 F.3d 424, 428 (5th Cir.1996); *Nash v. Electrospace Sys., Inc.,* 9 F.3d 401, 404 (5th Cir.1993). However, the employer must first have no-

tice, actual or constructive, of the alleged harassment. The defendant Kroger submits that it took prompt remedial action after it was notified of the alleged sexual harassment and that such action insulates it from liability.[12] The plaintiff contests this assertion by noting that Kroger had constructive knowledge of the alleged harassment weeks or even months before it took any preventive action, thus creating a genuine issue of material fact as to the promptness with which Kroger reacted. In addition, the plaintiff suggests that a genuine issue of material fact exists as to the effectiveness of the defendant's procedures in halting the alleged sexual harassment.

### A. Kroger's Knowledge of the Alleged Sexual Harassment

Liability may be imposed upon an employer for the discriminatory acts of an employee only if the employer knew or should have known of the employee's offensive conduct and failed to take steps to repudiate that conduct and eradicate the hostile environment. *Nash,* 9 F.3d at 404. The Fifth Circuit has noted that some uncertainty exists as to the type and extent of notice required to impose Title VII liability upon an employer. *Waltman,* 875 F.2d at 478. In this case, the defendant has demonstrated that no genuine issue of material fact exists as to Kroger's constructive or actual notice of the alleged harassment. The plaintiff failed to produce any admissible evidence demonstrating that Kroger should have had notice of the alleged harassment prior to July 7, 1994. *See* Plaintiff's Response in Opp. to

Mot. for Summary Judgment at 10–11. The competent summary judgment evidence is undisputed that other than defendant Bullington and certain of plaintiff's co-workers, no one at the Kroger store knew of the alleged sexual harassment. The plaintiff did not address her concerns to any other supervisor or store manager until she approached Ricky Hayles on July 7, 1994.[13] There is no genuine issue of material fact with regard to Kroger's lack of constructive knowledge prior to July 7, 1994.

Furthermore, the plaintiff failed to submit any competent evidence with regard to Kroger's actual knowledge of the alleged harassment prior to July 7, 1994. *Id.; see also Waltman,* 875 F.2d at 478 (noting complaints to higher management may demonstrate actual notice). The only admissible evidence in regard to the knowledge of the alleged harassment with which Kroger must be credited indicates that Kroger became aware of some of the plaintiff's complaints on July 7, 1994. Hayles Depo., Nov. 1, 1996, at 29–30. On that date, the plaintiff lodged a charge with Kroger store manager, Ricky Hayles.[14] Watts Depo., Sept. 12, 1996, at 59.

### B. Constructive Knowledge Based Upon Pervasive Harassment

In the alternative, Watts avers that the sexual harassment which she endured was so pervasive and egregious that constructive knowledge of Bullington's conduct must be imputed to Kroger. A demonstration of pervasive harassment can give rise to constructive knowledge of harassment on behalf of the employer. *Waltman,* 875 F.2d at

---

**12.** Because the court finds this argument persuasive, the undersigned declines to address the defendant's First Amendment argument that, inasmuch as Title VII restricts verbal expression of a sexual nature, it is unconstitutional as a content-based speech restriction. Much like the Fifth Circuit, the court shall leave this thorny problem for another day. *DeAngelis,* 51 F.3d at 596–97.

**13.** The plaintiff did not make the argument that Bullington's knowledge of his own offensive conduct was sufficient to impute notice to Kroger. In any event, that argument would have also failed. *See Sims v. Brown & Root Indus. Servs., Inc.,* 889 F.Supp. 920, 926–28 (W.D.La.1995) (noting Title VII does not impose strict liability),

*aff'd,* 78 F.3d 581 (5th Cir.), *cert. denied,* — U.S. ——, 117 S.Ct. 68, 136 L.Ed.2d 29 (1996).

**14.** The plaintiff requested that Mr. Hayles ask defendant Bullington to refrain from making comments about the plaintiff's "personal life." Watts' Depo., Sept. 12, 1996, at 62. Kroger disputes the plaintiff's contention that this complaint was sufficient to constitute a charge of sexual harassment of which Kroger should have been aware. The court is also wary of such a liberal interpretation, as discussed *infra.* However, it is undisputed that Kroger, through Ricky Hayles, took prompt action after receiving this complaint which effectively eliminated all alleged sexual harassment of the plaintiff. Watts Depo., Sept. 12, 1996, at 69–70, 81–82, 118.

478. However, the plaintiff has not made such a demonstration. She has not alleged harassment of such a pervasive nature that notice must be imputed to Kroger. *See infra* note 14. The competent summary judgment evidence presented to this court reveals that no one in a position of authority, other than Bullington, had any knowledge of the conduct. The plaintiff has not pointed to any factual basis or admissible summary judgment evidence from which a reasonable juror could conclude that Kroger knew or should have known of the alleged harassment prior to July 7, 1994.

## C. Prompt and Effective Remedial Action

Where the employer receives notice of alleged sexual harassment and promptly responds with remedial action reasonably calculated to end the harassment, liability may not be imposed against the employer, even if the conduct complained of did occur. *Carmon v. Lubrizol Corp.*, 17 F.3d 791, 794–95 (5th Cir.1994). "Whether an employer's response to discriminatory conduct is sufficient will necessarily depend on the particular facts of the case—the severity and persistence of the harassment, and the effectiveness of any initial remedial steps." *Waltman*, 875 F.2d at 479 (citations omitted).

After the plaintiff presented her charge to Ricky Hayles that defendant Bullington was making comments about plaintiff's "personal life," Hayles spoke with defendant Bullington that same day and instructed him to leave the plaintiff alone. Hayles Depo., Nov. 1, 1996, at 15–16. The plaintiff admits that all sexual harassment ceased after July 7, 1994. Watts Depo., Sept. 12, 1996, at 69–70, 81–82, 118. From the evidence before the court, the undersigned is convinced that Kroger promptly took effective [15] remedial steps after receiving the plaintiff's complaint [16] of July 7, 1994.

On July 19, 1994, the plaintiff filed a sexual harassment grievance with her union. The plaintiff also avers in reference to this complaint that the defendant failed to promptly and adequately address the charge of sexual harassment contained therein. There is no concrete proof within the record indicating when Kroger received notice of the union grievance. Humbles Depo., Sept. 13, 1996, at 20. Mr. Michael Humbles, Kroger's human resources director, testified that he did not know whether Kroger received notice of the grievance in July, August or September. *Id.* Since the court must view the facts in the light most favorable to the non-movant, the court finds for purposes of this motion that Kroger received notice of the grievance in July. It is undisputed that Kroger began its investigation into the plaintiff's allegations of sexual harassment in early September.

---

15. As noted *supra*, the plaintiff does not dispute that the sexual harassment ceased July 7, 1994. However, she complains that the steps taken by Kroger were insufficient as a matter of law to insulate it from liability for sexual harassment because the plaintiff was harassed in various other ways after July 7. The plaintiff misconstrues the law in this circuit. The measures taken by Kroger were effective in halting the alleged sexual harassment. Thus, Kroger may not be held liable for sexual harassment. *Garcia v. Elf Atochem North America*, 28 F.3d 446, 451 (5th Cir.1994); *Jones*, 793 F.2d at 719–20. However, although the instances of, for lack of a better term, generic harassment may not support a finding of liability for sexual harassment under Title VII, they may be evidence of retaliation prohibited by Title VII. The plaintiff has included in her cause of action a claim for retaliation and that is the proper context in which to consider the instances of "generic" harassment which are alleged to have occurred subsequent to July 7, 1994.

16. The court notes again the dispute between the parties as to whether the July 7, 1994, complaint to Ricky Hayles constitutes notice to Kroger that the plaintiff was complaining about *sexual* harassment. The plaintiff was visibly upset when she entered Mr. Hayles' office and requested that Hayles ask defendant Bullington to refrain from making comments about the plaintiff's personal life. Hayles Depo., Nov. 1, 1996, at 15–16. Bullington had been following the plaintiff about the store that day calling her homeless and a homewrecker, commenting upon the fact that the plaintiff had left her husband and children and was having an affair with a married man. *Id.* The evidence before the court indicates that this was the only context in which the complaint was made and of which Kroger had notice. As such, the court finds that the complaint was not one of sexual harassment sufficient to provide Kroger with notice and no reasonable juror could conclude otherwise. Irrespective of that finding, Kroger took immediate measures that eradicated any subsequent sexual harassment and thus insulated itself from liability for that sexual harassment.

Humbles Depo., Sept. 13, 1996, at 21. Even with approximately a month and a half delay between notice of the grievance and action taken in response, the court is of the opinion that Kroger's investigation was sufficiently prompt as a matter of law when taken in context of the entire situation.

The Fifth Circuit has noted that this issue is a fact-specific inquiry and that courts should look to "the severity and persistence of the harassment, and the effectiveness of any initial remedial steps" when determining the answer. *Waltman,* 875 F.2d at 479. The harassment alleged in the present case was neither severe nor persistent.[17] These factors weigh in favor of the defendant. The most persuasive factor which lends its weight to a decision favorable to the defendant is the "effectiveness of [Kroger's] initial remedial step." The parties do not contest the fact that all sexual harassment ceased after store manager Ricky Hayles discussed the plaintiff's July 7th complaint with Bullington. Thus, Kroger's initial remedial measure was completely effective. No sexual harassment occurred subsequent to July 7, 1994. Furthermore, Kroger offered to transfer the plaintiff to another department within the store on or about August 7, 1994, but she refused that transfer. Watts Depo., Sept. 12, 1996, at 107. This offer was made approximately two (2) weeks after the plaintiff filed her union grievance. After considering these factors, the court is of the opinion that the promptness with which Kroger responded to the plaintiff's July 19 grievance was adequate as a matter of law.

The extent of Kroger's investigation into the plaintiff's allegations set forth in her grievance was also sufficient as a matter of law to insulate Kroger from liability for sexual harassment. As part of Kroger's inquiry, Mr. Humbles interviewed the plaintiff, defendant Bullington, several of the plaintiff's co-workers, the assistant store manager and the store manager, Ricky Hayles. Humbles Depo., Sept. 13, 1996, at 21–28. At the conclusion of the probe, which lasted approximately three (3) to four (4) months, Mr. Humbles found no verification that the plaintiff had suffered sexual harassment.[18] *Id.* at 29, 34. Despite this finding, Kroger offered to transfer the plaintiff to another store of her choice, but she refused. *Id.* at 37. Kroger also offered to transfer defendant Bullington, but he likewise rejected the offer. *Id.* Furthermore, Mr. Humbles verbally reprimanded defendant Bullington during the investigation and at its conclusion. *Id.* at 43.

The Fifth Circuit has held on numerous occasions that an employer's reaction to alleged discriminatory conduct constituted prompt remedial action as a matter of law. *See, e.g., Waymire v. Harris County,* 86 F.3d 424, 428 (5th Cir.1996) (employer conducted a prompt investigation and reprimanded harasser orally and in writing); *Carmon v. Lubrizol Corp.,* 17 F.3d 791, 794–95 (5th Cir.1994) (employer conducted an investigation and reprimanded and transferred harasser); *Nash v. Electrospace Sys., Inc.,* 9 F.3d 401, 404 (5th Cir.1993) (harassed employee transferred to another supervisor and department with no loss in pay or benefits); *Dornhecker v. Malibu Grand Prix Corp.,* 828 F.2d 307, 309–10 (5th Cir.1987) (supervisor assured employee that after business trip concluded employee would no longer have any contact with harasser). This court is convinced that no genuine issue of material fact exists which precludes a finding that Kroger took the plaintiff's grievance seriously and that its actions and investigation constituted prompt

---

**17.** Indeed, the majority of the plaintiff's complaints concern isolated incidents which occurred only once. Other incidents of alleged sexual harassment took place during a period of approximately two (2) weeks. Watts Depo., Sept. 12, 1996, at 64–65, 72–73. Although defendant Bullington was more persistent in calling the plaintiff a "homewrecker" and "homeless," the plaintiff admits that these comments were not sexual in nature. *Id.* at 67, 82. Sex-neutral hostile conduct may not be used to support a hostile environment claim. *Farpella–Crosby v.* *Horizon Health Care,* 97 F.3d 803, 806 n. 2 (5th Cir.1996). Hostile conduct not based on the employee's protected status is not actionable under Title VII.

**18.** Kroger found that defendant Bullington had made inappropriate comments to the plaintiff, such as labeling her a homewrecker, but that these comments were not of a sexual nature proscribed by Title VII. *See supra* note 17.

remedial action as a matter of law.[19]   As such, the court need not address the other elements of the plaintiff's cause of action under a hostile work environment theory because Kroger cannot be liable as a matter of law. *Waymire*, 86 F.3d at 428.

## V.  RETALIATION UNDER TITLE VII

The defendant Kroger has also moved for summary judgment as to the plaintiff's claim for retaliation under Title VII.  A *prima facie* case of retaliation actionable under Title VII requires proof that (1) the plaintiff was engaged in a protected activity; (2) she suffered an adverse employment action; and (3) there is a causal connection between the adverse action and the protected activity. *DeAngelis*, 51 F.3d at 597.   The plaintiff submits that after she complained to Ricky Hayles on July 7, 1994, the defendants began to retaliate against her for making the complaint.   For instance, defendant Bullington changed her schedule and she began working nights.   Watts Depo., Sept. 12, 1996, at 83. She was assigned duties she normally had not been given, such as checking groceries. *Id.* at 99–100.   Mr. Hayles singled her out to mop the floor and clean the chrome in the produce department. *Id.* at 101, 103.   Defendant Bullington required the plaintiff to check with him before she took any breaks. *Id.*   The plaintiff avers that these alleged acts constitute retaliation prohibited by Title VII.   The court is of the opinion that Kroger is entitled to a judgment as a matter of law

on this claim of the plaintiff's for two reasons.   First, there is no proof of any causal relationship between several of the alleged retaliatory acts and the plaintiff's protected activity.   Second, the remaining alleged retaliatory acts of which there might remain a causal question do not constitute "adverse employment action" as a matter of law.

### A.  Lack of any Causal Relationship

The plaintiff admits that she did not engage in any activity protected by Title VII until she filed her union grievance on July 19, 1994.   Watts Depo., Sept. 12, 1996, at 86. Although she lodged a complaint with Ricky Hayles on July 7, 1994, that charge was not one of sexual harassment.   Watts Depo., Sept. 12, 1996, at 82, 86, 154.[20]   Furthermore, there is no record evidence before the court indicating that Kroger knew or should have known of the plaintiff's plans to file a grievance for sexual harassment on July 19, 1994. Thus, the earliest Kroger could have had notice that the plaintiff was engaging in an activity protected under Title VII was July 19, 1994.

The proof is undisputed that defendant Bullington changed the plaintiff's schedule prior to July 19, 1994.

Q: Okay.  Well, let me go back and see if I can't make that a little clearer. When did your schedule first change?

A: It first changed when I went upstairs to talk to Ricky about—on July 7th.

Q: And when did you report him (referring to Bullington)?

A: That July 7th.

Q: Is that the meeting with Mr. Hayles?

A: Yes.

Q: And you did not complain of being sexually harassed in that meeting, correct?

A: Not at that one.

Watts Depo., Sept. 12, 1996, at 82.  She further swore under oath:

Q: All right.  Now, does this particular document, that is, Deposition Exhibit Number 12 (referencing the grievance filed with the union July 19, 1994), represent the first time that you had made a complaint to anyone connected with Kroger that Arthur Bullington was sexually harassing you?

A: Yes.

---

**19.**  The plaintiff argues that Kroger's investigation was insufficient because Bullington was not disciplined or transferred, etc.  The plaintiff focuses on the wrong issue.  The issue courts look to is whether the employer's actions were effective in terminating the alleged sexual harassment and eradicating the hostile work environment, not to how harshly the alleged wrongdoer was punished. *Waymire*, 86 F.3d at 429 ("Title VII does not require that an employer use the most serious sanction available to punish an offender, particularly where, as here, this was the first documented offense by the individual employee.").   In this case, not only was Bullington verbally reprimanded on more than one occasion, even though Kroger's investigation did not sustain a finding of sexual harassment, but the plaintiff admits any sexual harassment stopped immediately after Hayles spoke with Bullington.

**20.**  The plaintiff testified in her deposition:

The next time my schedule—my next week's schedule was made out, that's when it was changed.

Q: All right. But at that point, you had not complained to anybody about being sexually harassed, had you?

A: No.

Q: When was the first time you complained to anybody about sexual harassment?

A: It's when I called the union and—and met with her and Teri Craven and we went over—and then we had a meeting with Mike Humbles and the zone manager.

Q: But that occurred after your schedule had changed?

A: Yes.

Watts Depo., Sept. 12 1996, at 86. The defendants changed the plaintiff's work schedule *prior* to her engagement in any protected activity. As such, there is no causal relationship between the plaintiff's schedule change instituted July 17, 1994,[21] and the filing of her sexual harassment grievance on July 19, 1994. *Long v. Eastfield College,* 88 F.3d 300, 305 n. 4 (5th Cir.1996) (noting plaintiff must prove that he or she would not have suffered adverse employment action "but for" engaging in Title VII protected activity); *McDaniel v. Temple Indep. Sch. Dist.,* 770 F.2d 1340, 1346 (5th Cir.1985). The court shall not consider the plaintiff's schedule change as a basis for her retaliation claim.

Similarly, there is no causal relationship between the plaintiff's engagement in a protected activity and defendant Bullington's request that the plaintiff check with him before she took any breaks.[22] The plaintiff testified that Bullington instituted this rule after she met with Hayles on July 7, 1994. Watts

Depo., Sept. 12 1996, at 104. Further, Bullington's rule that the plaintiff not help in the flower shop or the specialty foods department without permission was instituted after the July 7th meeting. *Id.* at 105–06. The plaintiff did not engage in any activity protected under Title VII until July 19, 1994. Defendant Bullington instituted these new "rules" for the plaintiff after her July 7th meeting with Hayles. There is no record evidence before the court evincing any causal relation between the new rules and the plaintiff's filing of her grievance on July 19. The court shall not consider the imposition of these rules as a basis for the plaintiff's retaliation claim.

### B. Insufficient to Constitute Adverse Employment Action

The plaintiff's remaining allegations in support of her retaliation claim offer no relief in that they are insufficient as a matter of law to constitute "adverse employment action." The plaintiff complains that Hayles began assigning her duties she had not normally been asked to perform.[23] Specifically, she avers that Hayles began calling her to help check groceries when she was working the produce department. Watts Depo., Sept. 12, 1996, at 99–100. However, she also testifies that this action did not affect her work schedule or decrease her pay in any manner. *Id.* She further states that Hayles would specifically look her up and ask her to mop the floor or clean the chrome in the store. *Id.* at 101. But she was only required to mop the floor or clean the chrome in the produce department where she worked, and she had been required to mop the floor before. *Id.* at 103. The plaintiff merely complains that Hayles, the store man-

*Id.* at 154.

**21.** *See* Def.'s Exh. 5 att. Watts Depo., Sept. 12, 1996.

**22.** Additionally, the court is of the opinion that this rule instituted by Bullington is insufficient to constitute an "adverse employment action." The plaintiff testified that the rule did not affect her schedule in any way nor cause her to lose any money. Watts Depo., Sept. 12, 1996, at 105. Additionally, Bullington never refused the plain-

tiff's request to take a break. *Id.* Even more telling is the fact that the plaintiff complied with the break rule for only a short time—about three to four weeks. *Id.*

**23.** Because the parties did not direct the court's attention to any record evidence demonstrating when these actions took place, the court construes the facts in favor of the nonmovant and assumes for the purposes of this motion that the actions took place after July 19, 1994.

**687**

ager, had never required her to do so.[24]  *Id.* at 101.  These actions also did not affect the plaintiff's schedule or pay in any way.[25]

■ The court is of the opinion that no reasonable juror could conclude that these actions should be construed as "adverse employment actions" sufficient to support a claim of retaliation.  " 'Title VII was designed to address ultimate employment decisions, not to address every decision made by employers that arguably might have some tangential effect upon these ultimate decisions.'  ... 'Ultimate employment decisions' include acts 'such as hiring, granting leave, discharging, promoting, and compensating.' " *Mattern,* 104 F.3d at 706 (quoting *Dollis v. Rubin,* 77 F.3d 777, 781–82 (5th Cir.1995)).  Kroger's store manager, Ricky Hayles, periodically asked the plaintiff to help check out groceries, or mop the floor and clean the chrome in the produce department.  The plaintiff was an employee of defendant Kroger.  These tasks were part of her job duties.  She is not entitled to preferential treatment simply because she engaged in an activity protected under Title VII.  Kroger's alleged actions are insufficient as a matter of law to constitute adverse employment action and the court shall not consider them in support of the plaintiff's retaliation claim.  Because all of the plaintiff's allegations of retaliatory conduct on behalf of Kroger have been disposed of by the court—either through lack of any causal relation to the plaintiff's engagement in a protected activity or due to the allegations' complete lack of sufficiency to constitute adverse employment action—the court finds that Kroger is entitled to a judgment as a matter of law as to the plaintiff's claim for retaliation under Title VII.

**24.** Defendant Bullington was the plaintiff's direct supervisor in the produce department.  After the July 7th meeting, Hayles instructed Bullington not to speak to the plaintiff.  Watts Depo., Sept. 12, 1996, at 106.  With Kroger in essence imposing a gag order on Bullington in relation to the plaintiff, the court does not find it improbable that it fell to the store manager, Hayles, to take over some of Bullington's duties in this regard—such as supervising the plaintiff and directing her to work where necessary in the produce department.

### CONCLUSION

Paragraph VII of the plaintiff's affidavit dated December 8, 1996, shall be allowed to stand.  However, the court finds that paragraphs III, X and XII of the plaintiff's affidavit shall be stricken from the record.  In addition, exhibits F–1 through F–5 attached to that affidavit shall also be struck.  The plaintiff confesses her Title VII claims against defendant Bullington and those claims shall be dismissed.  In addition, the court finds that no genuine issue of material fact exists which precludes granting the defendant Kroger a judgment as a matter of law against the plaintiff's Title VII claims for hostile work environment and retaliation.  Those claims shall be dismissed.

With the dismissal of the federal claims on summary judgment, the court declines to exercise its supplemental jurisdiction over the remaining pendent state law claims and shall dismiss them without prejudice.  28 U.S.C. § 1367(c)(3);  *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966);  *Parker & Parsley Petroleum Co. v. Dresser Indus.,* 972 F.2d 580, 590 (5th Cir.1992).

A separate order in accordance with this opinion shall issue this day.

### ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Pursuant to a memorandum opinion issued this day, the court upon due consideration of the defendants' motion for summary judgment finds the motion well taken and shall grant it.

Therefore it is ORDERED that:

1) The defendants' motion for summary judgment is hereby GRANTED.

**25.** In addition, the plaintiff alleges that defendant Bullington followed her on one occasion.  Such conduct is also insufficient to state any claim for retaliation.  *Mattern v. Eastman Kodak Co., et al.,* 104 F.3d 702, 708 (5th Cir.1997) (citing *Hill v. Miss. St. Empl. Serv.,* 918 F.2d 1233, 1241 (5th Cir.1990) (holding that allegations that co-workers stared at employee, followed her, delayed her disbursement checks and deleted experience data from reference form did not constitute retaliation), *cert. denied,* 502 U.S. 864, 112 S.Ct. 188, 116 L.Ed.2d 149 (1991)).

2) Paragraphs III, X and XII of the plaintiff's affidavit dated December 8, 1996, shall be stricken from the record. In addition, exhibits F–1 through F–5 attached to that affidavit shall also be struck. Paragraph VII of the plaintiff's affidavit dated December 8, 1996 shall be allowed to stand.

3) The plaintiff's Title VII claims against defendant Arthur Bullington are hereby DISMISSED.

4) The plaintiff's Title VII claim against defendant Kroger Co. for sexual harassment under a hostile work environment theory is hereby DISMISSED.

5) The plaintiff's Title VII claim against defendant Kroger Co. for retaliation is hereby DISMISSED.

6) The court declines to exercise its jurisdiction over the plaintiff's remaining state law claims and they are hereby DISMISSED WITHOUT PREJUDICE.

7) This case is CLOSED.

All memoranda, depositions, affidavits and other matters considered by the court in granting the defendants' motion for summary judgment are hereby incorporated and made a part of the record in this cause.