United States Court of Appeals,

Fifth Circuit.

No. 92-2964.

Summary Calendar.

Patsy Elaine CARMON, Plaintiff-Appellant,

v.

LUBRIZOL CORPORATION, Defendant-Appellee.

March 31, 1994.

Appeal from the United States District Court for the Southern District of Texas.

Before JOLLY, WIENER, and EMILIO M. GARZA, Circuit Judges.

PER CURIAM:

Plaintiff-Appellant Patsy Elaine Carmon challenges the district court's judgment on partial findings dismissing her claims of discrimination under Title VII. Specifically, Carmon contends that the district court applied the wrong legal standard to her "hostile work environment" claim premised on sexual harassment, i.e., that the district court should have applied the standard recently reaffirmed by the Supreme Court in *Harris v. Forklift Systems, Inc.*[1]

We conclude that Carmon thoroughly misapprehends the basis of the district court's dismissal. First, the district court did apply the standard reaffirmed in *Harris*. Second—and of more significance—Carmon fails to address the grounds for the dismissal. The dismissal of her suit was grounded on the district court's

---

[1] --- U.S. ----, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993).

1

conclusion that Defendant-Appellee Lubrizol Corporation ("Lubrizol") could not be held liable here because it took prompt and appropriate remedial action in response to Carmon's allegations. We thus conclude that Carmon has wasted the time and resources of this court and of the opposing party by completely failing to present any plausible challenge to the district court's judgment. Consequently, we dismiss this appeal as frivolous and impose sanctions under United States Code Title 28, Section 1927 and Federal Rules of Appellate Procedure 38.

I

FACTS AND PROCEEDINGS

After holding a bench trial, the district court made the following findings regarding Carmon's hostile-work-environment claim.[2] Lubrizol, a specialty chemical company, hired Carmon in 1977 as an operator-trainee for Lubrizol's facility in Deer Park, Texas. Lubrizol promoted Carmon to the position of "C" operator in 1978 and to the position of "B" operator in 1981. She was terminated in October 1987 for failing either to report to work or respond to Lubrizol's repeated requests for information regarding her medical condition.

During her ten-year tenure with Lubrizol, Carmon twice claimed that she had been subjected to a hostile work environment caused by sexual harassment. In 1986 Carmon engaged in an argument with an

_____

[2]Carmon also claimed that she had been terminated or constructively discharged, denied a promotion, and subjected to racial harassment, all in violation of Title VII. As noted *infra,* Carmon has not challenged the district court's dismissal of these other claims.

2

"A" operator, Therman Brittain, over her failure to complete a work assignment, an argument that degenerated into the trading of vulgar insults by both Carmon and Brittain. Shortly after this argument, Carmon made her first accusation, one in which she complained to a supervisor about the language used by Brittain. She also alleged that Brittain asked her questions about her sexual activities, although she made no allegation that Brittain touched her or indicated to her that he wanted to engage in sexual relations.

Immediately, Lubrizol sprang into action. On the same day that Carmon made the complaint, several supervisors and the personnel manager of Lubrizol met with her. Carmon was told that Lubrizol appreciated her bringing this incident to its attention, that Lubrizol did not condone or tolerate sexual harassment, and that Lubrizol would conduct a prompt investigation.

Lubrizol proved to be as good as its word. Supervisory personnel of Lubrizol first questioned Brittain, who denied making any sexually-oriented comments or asking about Carmon's personal life; although he did admit to using foul language on many occasions. Next, Lubrizol's supervisors interviewed six witnesses, none of whom corroborated Carmon's claims regarding sexual insults or sexual innuendo by Brittain. From this investigation, Lubrizol concluded that both Carmon and Brittain had used foul language. Finally—because sufficient evidence indicated that Brittain had used offensive language—Lubrizol reprimanded Brittain in writing and transferred him to another shift. This investigation and disciplinary action was completed within three days following the

3

original complaint.

Carmon made her second accusation in a ten-page letter sent to Lubrizol in September 1987. Upon receipt of this letter, Lubrizol conducted another prompt, thorough investigation. Lubrizol sent two employees from its corporate human resources department to join the Deer Park personnel manager in the investigation. This team interviewed the employees named in Carmon's letter. In addition, the team asked Carmon to provide any additional information that she may have had regarding her allegations—a request that she declined.[3]

Although this investigation did not turn up evidence of sexual harassment, it did uncover some proof that employees engaged in horseplay and other inappropriate behavior in the workplace. In response, Lubrizol distributed a memorandum to all employees regarding such behavior. This memorandum pointed out that vulgar and abusive language, practical jokes, and horseplay would not be tolerated in the workplace. In addition, it reminded all Lubrizol employees that necessary action would be taken against anyone participating or engaging in such behavior. Finally, Lubrizol held meetings to inform employees of what constitutes appropriate workplace behavior.

---

[3]At trial, Carmon raised a plethora of new allegations of sexual harassment. These allegations kept expanding during direct examination, cross-examination, and even redirect examination. Eventually, the district court concluded that Carmon was not credible regarding these new allegations. In addition, the district court observed that Carmon had never—despite having ample opportunity and encouragement—informed Lubrizol of these allegations.

4

In April 1990, Carmon filed suit against Lubrizol alleging that she had been terminated or constructively discharged, denied a promotion, and subjected to racial and sexual harassment, all in violation of Title VII. Her claims of sexual and racial harassment were premised on the contention that such harassment created a hostile work environment. For three days, Carmon presented her case to the district court. After Carmon rested her case, the district court entered a judgment on partial findings under Federal Rule of Civil Procedure 52(c) and dismissed the case with prejudice. Carmon timely appealed.

II

DISCUSSION

We liberally construe briefs in determining issues presented for review; however, issues not raised at all are waived.[4] Moreover, Rule 28 of the Federal Rules of Appellate Procedure mandates that:

> The brief of the appellant shall contain ... [a]n argument. ... The argument shall contain the contentions of the appellant with respect to the issues presented, and the reasons therefor, with citations to the authorities, statutes and parts of the record relied on.[5]

Even when we thus construe Carmon's brief liberally, we

---

[4]*E.g., Atwood v. Union Carbide Corp.,* 847 F.2d 278, 280 (5th Cir.1988), *reh. on other grounds,* 850 F.2d 1093, *cert. denied,* 489 U.S. 1079, 109 S.Ct. 1531, 103 L.Ed.2d 836 (1989); *Kincade v. General Tire & Rubber Co.,* 635 F.2d 501, 504-06 (5th Cir.1981).

[5]FED.R.APP.P. 28(a).

discern but one challenge to the district court's judgment.[6]  As noted, Carmon's one contention on appeal is that the district court applied the wrong legal standard to her hostile-work-environment claim premised on sexual harassment, i.e., that the court should have applied the standard recently reaffirmed in *Harris v. Forklift Systems.*[7]

Carmon misapprehends the basis of the district court's dismissal.  Again, the district court did apply the standard reaffirmed in *Harris:*  That a hostile-work-environment claim is established when the complained of discriminatory conduct "is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.' "[8] *Harris*—which was decided after the district court entered judgment in the instant case—did not change this standard.  Rather, *Harris* merely made clear that psychological injury is not an element of a hostile-work-environment claim[9]—a point that was never at issue in the instant case.

Second—and more significantly—the district court grounded its

---

[6]Thus, any arguments that Carmon may have had regarding her termination or constructive discharge, her lack of promotion, and her alleged subjection to racial harassment, are deemed waived. *See, e.g., Kincade,* 635 F.2d at 504-06.

[7]--- U.S. ----, 114 S.Ct. 367, 126 L.Ed.2d 295.

[8]*Id.,* at ----, 114 S.Ct. at 369-70, 126 L.Ed.2d at 301 (quoting *Meritor Savings Bank v. Vinson,* 477 U.S. 57, 67, 106 S.Ct. 2399, 2405, 91 L.Ed.2d 49 (1986)).  In its Conclusions of Law, the district court stated and applied the standard exactly as it has been enunciated in *Meritor* and *Harris.*

[9]*Harris,* --- U.S. at ---- - ----, 114 S.Ct. at 370-72, 126 L.Ed.2d at 302-03.

dismissal on the conclusion that Lubrizol could not be held liable because it took prompt and appropriate remedial action in response to Carmon's allegations. Under controlling precedent, for Carmon to succeed in holding Lubrizol liable for the misconduct of its employees, she had to show that Lubrizol failed to take such action.[10] And given the overwhelming evidence of the prompt and proper responses by Lubrizol, Carmon has not—and plausibly cannot—challenge the district court's findings and conclusion on this issue. Consequently, as the district court correctly held, Carmon failed to establish an essential element of her hostile-work-environment claim.

## III

## SANCTIONS

Lubrizol has requested attorney's fees and costs as sanctions against Carmon for prosecuting this appeal. Under Federal Rule of Appellate Procedure 38 we have discretion to sanction an appellant when an appeal is determined to be frivolous,[11] which we have defined as "an appeal in which "the result is obvious or the arguments of error are wholly without merit.' "[12] Moreover, we may hold counsel personally liable for costs, expenses, and attorney's

---

[10]*See, e.g., Jones v. Flagship Int'l,* 793 F.2d 714, 719-20 (5th Cir.1986, *cert. denied,* 479 U.S. 1065, 107 S.Ct. 952, 93 L.Ed.2d 1001 (1987). *Harris* did not change this requirement. *Nash v. Electrospace System, Inc.,* 9 F.3d 401, 403-04 (5th Cir.1993).

[11]FED.R.APP.P. 38.

[12]*E.g., Montgomery v. United States,* 933 F.2d 348, 350 (5th Cir.1991) (quoting *Coghlan v. Starkey,* 852 F.2d 806, 811 (5th Cir.1988)).

fees under 28 U.S.C. § 1927 when that counsel "multiplies the proceedings in any case unreasonably and vexatiously...."[13]

Counsel for Carmon has caused this court and the opposing party to waste time and resources, yet has filed nothing more than a five-page "slap-dash" excuse for a brief—a brief that fails to raise even one colorable challenge to the district court's judgment. This brief starts with a Statement of Facts consisting only of cryptic citations to the record, then proceeds to an Argument consisting of selective quotes from *Harris,* and finally concludes with the bald assertion that the district court erred by failing to apply the standard reaffirmed in *Harris*—a patently inaccurate statement. Had counsel correctly read the district court's opinion, he would have realized that the court did in fact apply the very standard stated in *Harris.* Had counsel spent any real time studying the record and the opinion, he would also have discerned that his appellate argument was inapposite. The sexual harassment claim was disposed of on an entirely separate ground—one that could not plausibly be challenged on appeal.

Such a poor quality of briefing is inexcusable; prosecution of such a meritless appeal is likewise inexcusable. Consequently, we impose sanctions under Federal Rules of Appellate Procedure 38 and 28 U.S.C. § 1927, assessing double costs jointly and severally

---

[13]28 U.S.C. § 1927; *Caldwell v. Palmetto State Sav. Bank,* 811 F.2d 916, 919 (5th Cir.1987) (holding counsel and appellants jointly liable under § 1927 and Rule 38).

against Carmon and her counsel.[14]  We trust that this relatively mild sanction will provide counsel the "wake up call" needed to ensure that closer attention will be paid to his professional responsibilities in the future.  Should these lesser sanctions fail in that regard, however, future frivolous appeals, such as the one before use, will expose counsel to the full panoply of sanctions at our disposal for dealing with such conduct.

IV

CONCLUSION

Lubrizol twice did what a company *ought* to do when faced with allegations that an employee has been subjected to sexual harassment, engendering a hostile work environment:  It took the allegations seriously, it conducted prompt and thorough investigations, and it immediately implemented remedial and disciplinary measures based on the results of such investigations. Holding a company such as Lubrizol liable after it has taken such action would produce truly perverse incentives benefitting no one, least of all actual or potential victims of sexual harassment.

We conclude that the district court did not err in finding that Carmon completely failed to establish a necessary element of her hostile-work-environment claim.  We further conclude that Carmon and her counsel abusively prosecuted a meritless appeal. Consequently, Carmon's appeal of the judgment of the district court is DISMISSED as frivolous, with imposition of sanctions under

---

[14]*Cf., Caldwell,* 811 F.2d at 919 (holding client and counsel jointly liable for prosecuting a meritless appeal).

9

Federal Rules of Appellate Procedure 38 and 28 U.S.C. § 1927; double costs to be assessed jointly and severally against Carmon and her appellate counsel.