Eligah JASON

v.

BAPTIST HOSPITAL, et al.

No. 1:94–MC–80.

United States District Court,
E.D. Texas,
Beaumont Division.

Dec. 16, 1994.

out jurisdiction, the district court shall remand
the case and may order the payment of costs.

Eligah Jason, pro se.

### REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

HINES, United States Magistrate Judge.

Pending are Eligah Jason's motions for *in forma pauperis* status and appointment of

counsel in a proposed Title VII (employment discrimination) suit.[1]

The motions were referred to the undersigned United States magistrate judge for hearing and issuance of a report and recommendation as to whether the motions should be granted. A hearing was convened on December 8, 1994 in Beaumont, Texas, at the Jack Brooks Federal Building. The movant appeared to present his motion, respond to questions, and submit exhibits. Prior to the hearing, the court ordered movant to produce for the court's inspection a copy of his Equal Employment Opportunity Commission ("EEOC") investigative file. These records were timely received.

This report is based upon movant's complete court file and testimony adduced at the hearing.

## I. Background

On September 9, 1992, movant was sent by American Temporary Force ("ATF"), a temporary employment agency, to work as a laborer at Baptist Hospital in Beaumont, Texas. While at the hospital, movant injured his back lifting a garbage can, around midday. He went to use a telephone kept in a small break room to call ATF.

A confrontation between a hospital employee, Douglas Manning, and movant ensued regarding phone use. Manning, who is white, proceeded to call movant derogatory names, including "nigger." Movant stated Manning had subjected him to such comments earlier in the day. Movant subsequently left the job site due to his injury and did not return to work.

## II. The In Forma Pauperis Application

■ In *Adkins v. E.I. DuPont de Nemours, Inc.*, 335 U.S. 331, 69 S.Ct. 85, 93 L.Ed. 43 (1948), it was held that one need not be absolutely destitute to enjoy the benefit of proceeding *in forma pauperis*. An affidavit to proceed *in forma pauperis* is sufficient if it states that one cannot because of his poverty afford to pay for the costs of litigation and still provide for himself and any dependents. *Id.* at 339, 69 S.Ct. at 89.

■ Movant has not been employed since he left Baptist Hospital in September of 1992. He receives approximately $150.00 per month doing odd jobs, and approximately $441 per month in disability benefits due to a previous, unrelated medical condition.[2] He testified that he has no money in savings or checking accounts and has recently purchased a used vehicle, which is financed.

These facts favor granting movant's motion to proceed *in forma pauperis*.

## III. Motion for Appointment of Counsel

### A. Title VII

■ A Title VII plaintiff has no absolute right to an appointed counsel. Rather, the decision of whether to provide counsel lies solely within the discretion of the court. Governing circuit law indicates that in the exercise of its discretion, the district court should consider the following relevant factors:

1) Whether the complainant has the financial ability to retain counsel;

2) Whether the complainant has made a diligent effort to retain counsel; and

3) Whether the complainant has a meritorious claim.

*Caston v. Sears, Roebuck & Co.*, 556 F.2d 1305 (5th Cir.1977); *Neal v. IAM Local Lodge 2386*, 722 F.2d 247 (5th Cir.1984); *Gonzalez v. Carlin*, 907 F.2d 573 (5th Cir. 1990).

■ Finally, the court must be sensitive and innovative when it confronts the prob-

---

1. Title VII provides that "[u]pon application by the complainant and in such circumstances as the court may deem just, the court may appoint an attorney for such complainant and may authorize the commencement of the action without the payment of fees, costs, or security." 42 U.S.C. § 2000e–5(f)(1).

2. Movant, however, presented several exhibits indicating he has received substantial national and local publicity with regard to his singing career in the past two years. Under ordinary circumstances, movant would be expected to earn income from a successful singing career. Should movant persist in this suit, his assertion that he derived no income from singing may merit additional development by the court.

lems faced by *pro se* Title VII litigants. The court should remember nevertheless that (a) the *movant* has the burden of persuasion with regard to the application for appointment of counsel; and (b) any appointed counsel will serve entirely without compensation unless the suit is successful and attorney's fees are awarded. *See* 42 U.S.C. § 2000e–5(K). In general, then, the circumstances under which a Title VII litigant is entitled to an appointed counsel are limited. Succeeding sections of this report analyze whether those circumstances are present in this case.

### 1. Limitations

It is appropriate first to examine whether movant's claim is time barred. If so, an examination of the merits of his motion for appointment of counsel would be purely academic.

■ Under Title VII, individuals are required by statute to file their complaint in federal court no more than ninety days after the Commission has given notice to them that it has not filed a civil action. 42 U.S.C. § 2000e–5(f)(1). The beginning of the 90–day period of limitations begins to run on the date that the EEOC right-to-sue letter is delivered to the claimant. *Ringgold v. National Maintenance Corp.*, 796 F.2d 769 (5th Cir.1986). Where there is an ambiguity as to when notice is given, courts recognize that the ninety day period begins to run when the aggrieved party knows the EEOC has completed its efforts. *Zambuto v. American Tel. & Telegraph Co.*, 544 F.2d 1333 (5th Cir. 1977).

The record relevant to timeliness of Jason's complaint is muddled. The proposed complaint was tendered to the clerk of the court on September 29, 1994. This means Jason's complaint is timely only if he received notice of the Commission's action no earlier than July 1. Jason's proposed complaint states, however, that he received the right-to-sue letter on June 6, 1994. If so, his complaint was tendered too late. However, at least two other sources impugn the June 6 date. First, the Notice of Right to Sue is dated June 29, 1994. If correct, Jason could not have received it on June 6. Second, Jason sought legal representation from an attorney who, while declining to represent Jason, apparently reviewed the case and advised in writing that suit must be brought by September 28, 1994.

Despite Jason's allegation in the complaint that he received notice on June 6, 1994, the facts suggest it is likely sometime after June 29. Perhaps Jason meant to say July 6. That would seem plausible, considering expected mail delivery delay attributable to the intervening Independence day holiday. If July 6, 1994 was the date Jason received notice, his complaint was timely submitted.

At this juncture, the court is unable to determine unequivocally whether the complaint is timely. Therefore, assuming without deciding the movant timely filed his proposed complaint, the court proceeds to the merits of the case.

### B. *Ability to Afford an Attorney*

■ In analyzing this factor, a substantial showing of poverty as required to proceed *in forma pauperis* is not required. *Ivey v. Board of Regents*, 673 F.2d 266 (9th Cir. 1982). There need only be insufficient assets and income to enable movant to afford an attorney to investigate and file his claim. Since movant has met the heavier burden to proceed *in forma pauperis*, it follows that he has met the requirement of indigence to necessitate a favorable finding on this factor.

### C. *Efforts to Secure Counsel*

■ To be eligible for appointed counsel, plaintiff must make "a reasonably diligent effort under the circumstances to obtain counsel." *Bradshaw v. Zoological Soc'y*, 662 F.2d 1301 (9th Cir.1981); *Caston*, 556 F.2d at 1309. The *Caston* case suggests that a significant inquiry on this issue is whether the complainant has pursued the possibility of a contingent fee arrangement in his efforts or attempts to locate an attorney. *Id.*

■ At the hearing, movant testified that he had contacted only one attorney, Woodson Dryden of Beaumont, Texas, about his employment discrimination claim. Dryden represented movant in a workers' compensation claims several years before. After investi-

gating the claim, Dryden decided not to undertake movant's representation in the matter at hand. *See* Plaintiff's Exhibit 3.

Movant never met with another attorney. He testified that he could not remember whether he and Dryden had discussed the possibility of a contingency fee arrangement, nor had he investigated the possibility of such an arrangement with another attorney. Movant's actions indicate that he was not reasonably diligent in his efforts to secure counsel. Therefore, the analysis of this factor counsels against the grant of the motion.

### D. *The Merits of the Case*

■ Examination of potential merits is most important, considering the unfairness of imposing service upon a member of the bar in a patently frivolous case. This factor also is the most difficult to apply.

■ When considering the merits, the determination reached by the EEOC should not be ignored. On the other hand, the court cannot give preclusive effect to the EEOC determination. The court should inquire as to the validity of the EEOC's determination. *Caston*, 556 F.2d at 1309. In this regard, findings that the EEOC determination is supported by substantial evidence in the investigative file would weigh heavily toward appointing an attorney.

■ Examination of the merits *sua sponte* before the defendant has been required to answer is akin to a frivolousness review of a general *in forma pauperis* proceeding. *See* 28 U.S.C. § 1915(d). The procedure cannot serve as a fact finding process for the resolution of disputed facts. *Denton v. Hernandez*, 504 U.S. 25, ——, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992).

■ Reduced to simplest terms, frivolous suits are those without an arguable basis in law or fact. *Neitzke v. Williams*, 490 U.S. 319, 325, 109 S.Ct. 1827, 1831, 104 L.Ed.2d 338 (1989). Thus, the duty to screen for frivolousness includes responsibilities to determine first whether the case is based on a recognized legal theory, and second, to make an initial assessment of the plaintiff's factual allegations in light of what plaintiff must eventually prove at trial if plaintiff is to recover on that theory. The court may not construct arguments or legal theories for the plaintiff, but the plaintiff's complaint is to be construed liberally when, as here, the plaintiff is *pro se*. *See Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972).

■ The initial assessment of plaintiff's alleged facts must be weighted in plaintiff's favor, that is, the court must accept as true the facts alleged by plaintiff unless they rise to the level of the irrational or the wholly incredible. *Denton*, 504 U.S. at ——, 112 S.Ct. at 1733. Weighing in plaintiff's favor also means indulging all reasonable inferences in plaintiff's behalf. *See Johnson v. Rodriguez*, 943 F.2d 104, 107 (1st Cir. 1991). Therefore, if plaintiff's alleged facts are not clearly baseless, and if proven they would support a recognized legal theory of recovery, the plaintiff must be given an opportunity to commence the action, irrespective of costs.

### 1. Movant's Contentions

Movant testified he was employed by American Temporary Force on September 2, 1992, and sent as a contract laborer to Baptist Hospital, which was engaged in renovations. Movant arrived around 8 a.m. Some time that morning, movant encountered Douglas Manning, a white hospital employee, who is characterized by movant as a painter. Movant, a black male who wears a nose ring, testified Manning called him several derogatory names over the course of the morning, including "nigger" and "faggot." This is corroborated by affidavit of another employee present on the job site.

In an unrelated incident, movant injured himself lifting a garbage can sometime between noon and 3 p.m. He attempted to use the telephone in a break room to call ATF. Movant stated he had seen others using the phone, and had used it himself earlier that day, to telephone his wife and tell her not to bring him lunch. Movant testified he was not abusing the phone and did not make any other calls. Manning objected and told movant to use a pay phone. He also interjected

several more expletives and derogatory comments.

Movant further testified he then left the job site to see a physician. He returned to the hospital to complain about Manning's behavior the following day, but received no satisfaction. This proposed lawsuit ensued.

## 2. Respondent's Position

The employer is not yet before the court. In the capacity of respondent in the EEOC proceedings, Baptist Hospital claimed there was no discrimination involved in the actions taken toward plaintiff. Instead, respondent contended movant had been using the phone excessively, responding to a beeper, and, when confronted, had become agitated and aggressive. Respondent further claimed movant threatened Manning, whom they described as the Director of Safety, with physical harm upon being reprimanded. When Manning went to retrieve a supervisor, movant left the job site.

## 3. EEOC Determination

The EEOC determined that a "preponderance of the evidence gathered in EEOC's investigation fails to prove Charging Party's claim" that he was "discriminated against because of his race." The EEOC found instead that "the records do not dispute the fact that the Charging Party was reprimanded, but not abused. The investigation revealed that the Charging Party received the same instructions about the work area as other employees."

## 4. Discussion and Analysis

Movant alleges he was insulted, abused, or harassed while employed at Baptist Hospital.[3] He does not allege he was terminated or forced to leave his position at the hospital due to discrimination, consequently, he seeks to present a claim of a "hostile work environment." *See Meritor Sav. Bank v. Vinson,* 477 U.S. 57, 62, 106 S.Ct. 2399, 2403, 91 L.Ed.2d 49 (1986); *Rogers v. Equal Employment Opportunity Comm'n,* 454 F.2d 234, 238 (5th Cir.1971), *cert. denied,* 406 U.S. 957, 92 S.Ct. 2058, 32 L.Ed.2d 343 (1972).

In order to state a claim for a hostile work environment, movant must show he was subjected to an environment "so heavily polluted with discrimination as to destroy completely the emotional and psychological stability of minority group workers." *Rogers,* 454 F.2d at 238. The Supreme Court has stated that for harassment to be actionable, "it must be sufficiently severe or pervasive to alter the conditions of [the plaintiff's] employment and create an abusive working environment." *Meritor,* 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986) (addressing sexual harassment).

An employer must investigate a complaint of harassment and "take prompt and appropriate remedial action, 'reasonably calculated' to end the harassment." *Waltman v. International Paper Co.,* 875 F.2d

---

**3.** Title VII precludes discriminatory action only from "employers." It is questionable whether Baptist Hospital was actually movant's "employer" under Title VII. At the time of the incident, movant testified he believed his employer was ATF. When he was injured, he stated he needed to call "his employer" from the hospital. The record also reflects that employees of the hospital told him he needed to call ATF, as they were not responsible for his medical treatment. Further, movant testified his paycheck came from ATF. Finally, when movant filed for workers' compensation benefits in conjunction with the injury he sustained at the hospital, his Texas Workers' Compensation Commission Forms contain "American Temporary Force" in the box marked "Employer's Name."

Title VII jurisprudence, however, permits plaintiffs to show entities other than nominal employers to be regarded as an employer for

Title VII purposes. Whether a defendant is the plaintiff's "employer" is a two-step process: first, the defendant must meet statutory guidelines and second, there must be an employment relationship present. *Deal v. State Farm County Mutual Ins. Co.,* 5 F.3d 117 (5th Cir.1993). The central issue defining "employer" might be "control" of the employee, *see Deal,* 5 F.3d at 118, although this is not the only factor to consider. Other factors to consider include "ownership of the equipment necessary to [the job's] performance, responsibility for costs associated with operating that equipment ... responsibility for obtaining insurance ... responsibility for maintenance and operating supplies, ability to influence profits, length of time commitment, form of payment, and directions on schedules or on performing work." *Broussard v. L.H. Bossier, Inc.,* 789 F.2d 1158, 1159 (5th Cir.1986).

468, 479 (5th Cir.1989). The Fifth Circuit has recently held that in order to state a claim for a hostile work environment, remedial action must be sought and denied from supervisors. *Carmon v. Lubrizol,* 17 F.3d 791 (5th Cir.1994) (in context of sexual harassment).

■■■ A continued pattern of verbal and physical abuse directed toward an employee who is a member of a protected class will usually prove sufficient to raise an inference of discrimination. Movant has not reached this standard because "mere utterance of an ethnic or racial epithet which engenders offensive feelings in an employee" does not sufficiently affect employment conditions to violate Title VII. *Rogers,* 454 F.2d at 238. Movant alleges a single instance of harassment by an isolated employee in a non-supervisory role. This instance occurred on his first and only day of employment. While the alleged conduct is unacceptable and inappropriate, it does not constitute a pattern of behavior. "Not all work place conditions that may be described as harassment affects a term, condition, or privilege of employment within the meaning of Title VII." *Meritor,* 477 U.S. at 67, 106 S.Ct. at 2405.

Additionally, movant never satisfied the Fifth's Circuit's prerequisite of supervisor notification. Movant has not presented evidence to suggest management acquiesced to or even possessed knowledge of Manning's behavior. He specifically testified that he did not notify supervisors of the alleged harassment, and complained only the day after he had left his job. Movant's proposed action for a hostile work environment, therefore, is fatally flawed.

### 5. Conclusion of Appointment of Counsel Analysis

Movant has shown that he cannot afford an attorney, but that he has not made diligent attempts to obtain one. As noted above, the merits of this case do not indicate a substantial likelihood of success. Title VII does not vest the court with authority to pay appointed counsel. Thus, counsel should not be required to donate time for a cause which has little or no merit. Therefore, these facts favor denying movant's motion for appointment of counsel.

### *IV. Recommendation*

(1) The motion to proceed *in forma pauperis* should be granted.

(2) The motion for appointment of counsel should be denied.

### *V. Objections*

Within ten (10) days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C.A. § 636(b)(1)(C) (West Supp.1985).

Failure to file written objections to the proposed findings and recommendations contained in this report within ten days after service shall bar an aggrieved party from *de novo* review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or manifest injustice. *Rodriguez v. Bowen,* 857 F.2d 275 (5th Cir.1988).