**Johnnie Faye DUNN, Plaintiff,**

v.

**Ed MENDOZA, James Harris and Batesville Casket Company, Inc., an Indiana corporation, Defendants.**

No. 2:96CV166–S–A.

United States District Court,
N.D. Mississippi,
Delta Division.

Nov. 10, 1997.

Jim. D. Waide, III, Victor I. Fleitas, Tupelo, MS, for Plaintiff Johnnie Faye Dunn.

Ernest Russell Turner, Phelps Dunbar, Jackson, MS, for Defenants Ed Mendoza and Batesville Casket.

Solomon C. Osborne, Greenwood, MS, for Defendant James Harris.

## OPINION

SENTER, Chief Judge.

This cause is before the court upon the defendant's motion for summary judgment on the sexual harassment claim of the plaintiff The plaintiff previously dismissed the individual defendants, Ed Mendoza and James Harris.

## FACTS

Johnnie Faye Dunn brings this cause alleging sexual harassment in the workplace during her employment with Batesville Casket Company. Dunn, who began working for the casket company in 1988, claims that she was sexually harassed by two of the defendant's employees, Ed Mendoza and James Harris. First, Dunn alleges that Mendoza, her direct supervisor, began harassing her in approximately 1990 or 1991. According to Dunn, Mendoza asked her to work late one day and then proceeded to rape her in the restroom. On the following day, Dunn claims she reported the incident to Mike Merritt, the human resources manager at that time, who allegedly told Dunn "that if she wanted to keep her job or her reputation she would go back to work and keep her mouth shut, or else if she said anything about the incident she would be ruined for life and never get a job in that town." After the rape, Mendoza "continued to engage in a pattern of sexual harassment towards Ms. Dunn through the continuous use of vulgar language and sexual propositioning." Mendoza left the casket company November 30, 1992.

In her deposition, Dunn alleges that James Harris began sexually harassing her in February, 1994. Dunn claimed under oath that "he [Harris] started this acting wrong the last month or so of my employment." Dunn stated that Harris would "touch me on my breasts and on my butt and in my hair."[1] According to Dunn, she complained to her supervisor, Bobby Vasquez, who disputes knowledge of her complaint. In her deposition, Dunn stated the following in regard to Vasquez's response:

A. He just wrote it off like, you know—he just wrote it off. .

Q. Well, what do you mean by that?

A. At one time, he said, you know, ya'll will get over it. Because I told him, I said, I'm sick and tired of him having his finger in my face, and he just patted me on my shoulder. A lot of times, he would just take my hand and just, ya'll will be okay like he never took nothing serious.

On February 24, 1994, an incident occurred over (literally) one of the coffins between Dunn and Harris. On the same day, James Kennedy, Dunn's boyfriend who was also an employee of the casket company, informed Terry Copeland, the human resource manager, that Harris had grabbed Dunn's arms and wrists and pointed his finger in her face. Copeland immediately began an investigation by speaking with Dunn and her supervisor, Bobby Vasquez. During this initial meeting, Dunn corroborated Kennedy's report of the incident Harris was instructed by Vasquez to avoid all physical contact with Dunn.

On the following day, Friday, February 25, 1994, Copeland met again with Dunn to de-

---

1. Dunn additionally stated, "He would be from afar like kissing at me and stuff like that. Sometimes he would put things in his pants acting like he had a big penis. A lot of times he would just say I love you and stuff like that. I want you. And if anybody approached me, he would pick fights with them."

termine if any problems had arisen since the day before Dunn indicated there were no problems. On Monday, February 28, 1994, Dunn reported to work with a "Request for Leave of Absence and for Sickness and Accident Benefits." After Copeland denied Dunn's request for leave, Dunn then informed Copeland that Harris had been sexually harassing her by brushing against her breasts and buttocks, and that she had complained to Vasquez but to no avail. Dunn further informed Copeland that during the scuffle over the casket Harris had slapped her and grabbed her breasts and crotch. Copeland immediately confronted Harris, spoke with Dunn's co-workers, and conducted a meeting in which he reviewed the company's sexual harassment policy.

Dunn never returned to her job at the casket company after beginning a leave of absence on February 28, 1994. On April 16, 1994, Dunn filed a charge of discrimination with the EEOC listing as harassment, complaints against both Mendoza and Harris. The defendant moves for summary judgment based upon Dunn's failure to timely file an EEOC charge against Mendoza, Dunn's failure to allege unwelcome sex-based harassment from Harris, and Dunn's failure to allege that the casket company did not take prompt remedial action to end the harassment.

## ANALYSIS

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). When a proper motion for summary judgment is made, the non-moving party must set forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202, (1986). A dispute about a material fact is genuine if the evidence is such that a

reasonable jury could return a verdict for the non-moving party. *Gibson v. Rich*, 44 F.3d 274, 276 (5th Cir.1995).

In order to establish a prima facie case of workplace sexual harassment, a plaintiff must demonstrate that (1) she belongs to a protected class; (2) she was subject to unwelcome sexual harassment; (3) the harassment affected a term, condition, or privilege of employment; and, (4) the employer knew or should have known of the harassment and failed to take prompt remedial action. *DeAngelis v. El Paso Municipal Police Officers Association*, 51 F.3d 591, 593 (5th Cir.), *cert. denied*, —— U.S. ——, 116 S.Ct. 473, 133 L.Ed.2d 403 (1995).

Dunn contends that the claim against Batesville Casket is timely based upon the continuing violation doctrine established in *Berry v. Board of Supervisors of LSU*, 715 F.2d 971, 981–2 (5th Cir.1983), which allows liability to attach for acts outside the statutory time limit provided that at least one incident occurred within the 180 day time frame. *Waltman v. International Paper Co.*, 875 F.2d 468, 474 (5th Cir.1989). Under *Berry*, three factors must be met before the continuing violation doctrine may be applied. The *Berry* factors are: (1) subject matter of the alleged acts; (2) frequency of the alleged acts; and, (3) the degree of permanence of the alleged acts, *i.e.*, whether the alleged violations should trigger an employee's awareness and duty to assert her rights. *Berry*, 715 F.2d at 981. In applying the factors, this court finds that Dunn has not established a continuing violation. Dunn alleges Mendoza sexually harassed her until his employment with Batesville Casket ended on November 30, 1992. Her complaint with Harris, however, does not begin until February of 1994. Therefore, according to the plaintiff's own testimony, there was a 14–month delay between the end of Mendoza's alleged harassment and the beginning of offensive conduct on the part of Harris.[2] Dunn filed her charge with the EEOC on April 16,

2. Dunn might have established a continuing violation if the incidents, even though 14 months apart, involved actions by one individual, or if the incidents, even though involving actions by at least two separate individuals, had occurred with less of a time span. Here, Dunn complains of two isolated incidents rather than conduct that was *continuing* in nature.

1994, well beyond the 180 day time frame for alleging sexual harassment from Mendoza.

 In regard to the Harris harassment, this court finds that Batesville Casket Company complied with Title VII by taking prompt remedial action. Copeland, the human resource manager, was notified of the "harassment" at least by February 24 and only then by the plaintiff's boyfriend.[3] Copeland immediately responded to the complaint by investigating the incident and by speaking directly with Dunn. After Dunn alleged the sexually-based complaint on February 28, Copeland responded by confronting Harris and by conducting a meeting in which he reviewed the company's sexual harassment policy with employees. In order to meet its obligation under Title VII, Batesville Casket was to have taken action which was "reasonably calculated to end the harassment." *Garcia v. Elf Atochem of North America*, 28 F.3d 446, 451 (5th Cir.1994); *see also Johnson v. Johnston Tombigbee Furniture Manufacturing Company*, 1996 WL 671333 (N.D.Miss.1996) (finding that a reprimand from the employer was appropriate remedial action considering the circumstances).

 Dunn additionally alleges that she did complain to her immediate supervisor, Bobby Vasquez, who just responded by holding her hand and "never took nothing serious." Vasquez disputes that Dunn complained to him about Harris. Dunn asserts in her deposition that the offensive conduct by Harris did not begin until early February and that until then, they were friends. Where the employer receives notice of alleged sexual harassment and promptly responds with remedial action reasonably calculated to end the harassment, liability may not be imposed against the employer, even if the conduct complained of did occur. *Carmon v. Lubrizol Corp.*, 17 F.3d 791, 794–95 (5th Cir.1994). "Whether an employer's response to discriminatory conduct is sufficient will necessarily depend on the particular

facts of the case—the severity and persistence of the harassment, and the effectiveness of any initial remedial steps." *Waltman*, 875 F.2d at 479. Since: Dunn could not have complained about the "casket incident" prior to its happening, the only allegations that Dunn could have lodged against Harris to her supervisor would have been that Harris had been brushing against her breasts and buttocks, that he had kissed her from "afar" and that he had put things in his pants. Given the nature (the severity) and the time frame [4] (the persistence) of the pre-coffin-incident harassment, this court finds that Batesville Casket company's response to the allegations of Dunn was sufficiently prompt. *See Watts v. The Kroger Co.*, 955 F.Supp. 674 (N.D.Miss.1997).

For the reasons stated above, this court finds that Dunn has failed to raise any genuine issues of material fact and that the defendant is entitled to judgment as a matter of law. An order in accordance with this opinion shall be issued.

## *ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DISMISSING CAUSE OF ACTION*

In accordance with a memorandum opinion issued concurrently,

IT IS ORDERED:

That defendant's motion for summary judgment is granted; and

That plaintiff's cause of action is hereby dismissed

---

3. The court acknowledges that the complaint taken to Copeland by Jamie Kennedy was not sexually based conduct and that it was not until the following Monday when Dunn was denied a medical leave of absence that she then alleged sexual harassment.

4. Giving the plaintiff every benefit of the doubt, the court assumes that the brushing, kissing, and penis-simulating began on the first day of February. .