Janice **BARTKOWIAK**, Appellant,

v.

**QUANTUM CHEMICAL CORPORATION**,
Appellee.

No. 07–99–0399–CV.

Court of Appeals of Texas,
Amarillo.

Nov. 22, 2000.

Nick C.E. LeBleu, Leesburg, GA, for appellant.

Orgain, Bell & Tucker, Robert J. Hambright, Mary Margaret Adams, Beaumont, for appellee.

Before BOYD, C.J., and QUINN and REAVIS, JJ.

BOYD, Chief Justice.

Appellant Janice Bartkowiak (Bartkowiak) brings this appeal challenging a summary judgment in favor of Quantum Chemical Corporation (Quantum) for claims arising out of her employment and subsequent discharge by Quantum. She now presents three issues, the decision of which, she says, will demonstrate reversible error. Disagreeing that reversal is required, we affirm the judgment of the trial court.

The nature of Bartkowiak's challenge requires a recitation of its factual and procedural history. Bartkowiak was an employee of Quantum for approximately 19 years. In the summer of 1991, she was injured in a non-work-related automobile collision. Because of the severity of those injuries, she was on medical leave for five months, returning to work in mid-December 1991. According to Bartkowiak, during her absence, Joyce Robinson told other employees that she was not injured severely enough to warrant the extended leave but was, in fact, malingering for the purpose of obtaining insurance proceeds as well as time off work.

Shortly after her return, Bartkowiak took accrued leave from December 18, 1991, until January 7, 1992. On February 6, 1992, Bartkowiak asserts she suffered a second injury when Jonathan Wolfe lowered her chair some six inches, causing her to fall. On February 17, 1992, she was told she was being terminated effective February 28, 1992. She asserts her position was not eliminated but, rather, Joyce Robinson, an African–American employee, was subsequently assigned to her former position. She also claims that she was sexually harassed by Thomas Nelson between January 8, 1992, and February 28, 1992, although she admits she did not report his conduct to Quantum.

In May of 1992, Bartkowiak filed a complaint with the Texas Commission on Human Rights (the Commission) alleging sexual harassment and discrimination because of her sex and physical condition. The complaint was not resolved within 180 days and the Commission issued a notice that she was entitled to bring a civil action

within 60 days. She then brought suit against Quantum, Robinson, Wolfe, Nelson, and Larry Girouard, alleging multiple causes of action, including wrongful discharge, sexual harassment, discrimination based upon her sex, race, religion, and disability, "blacklisting," intentional and negligent infliction of emotional distress, and finally, included a count in favor of her minor children for loss of parental consortium. This case was assigned cause number B–144,320 by the trial court. That court granted summary judgments in favor of defendants Wolfe, Robinson, and Girouard and severed those portions of the underlying suit. Bartkowiak did not appeal these judgments and they have now become final.

On August 24, 1999, the trial court granted a summary judgment in favor of Quantum. In its order, the trial court dismissed the following claims "with prejudice," namely: 1) racial discrimination; 2) disability discrimination; 3) blacklisting; and 4) intentional infliction of emotional harm. Bartkowiak's claims for 1) retaliatory discharge, 2) slander, 3) intentional or negligent infliction of physical harm, and 4) intentional infliction of emotional distress were dismissed with prejudice because the court found they were barred by *res judicata* after summary judgments were granted in favor of Robinson, Wolfe, and Girouard. The stated ground for dismissal of Bartkowiak's claim for negligent infliction of emotional distress was that that type of claim is not recognized by Texas law. Her claim for sexual harassment was dismissed because of her failure to report the alleged offensive conduct to Quantum. Finally, the claim for loss of parental consortium was dismissed "because Quantum bears no underlying liability." These claims were severed from the remaining claims against the defendant Nelson, Bartkowiak gave timely notice of appeal, and the trial court order is now the subject of this appeal.

As we noted, in pursuing her appeal, Bartkowiak presents three issues for our determination: 1) whether *res judicata* is applicable when the prior judgment was granted on the basis that the defendant was not a proper party; 2) whether dismissal of her claims for sexual harassment were proper because she did not report the harassment to Quantum; and 3) whether the claims brought on behalf of her children for loss of parental consortium were properly dismissed.

In *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985), our supreme court explicated the standards by which we review a summary judgment. They are:

1. The movant has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.

2. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true.

3. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor.

*Id.* In order for a defendant to be entitled to summary judgment, it must disprove as a matter of law at least one of the essential elements of each of the plaintiff's causes of action, *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471 (Tex.1991), or establish one or more defenses as a matter of law. *Randall's Food Markets, Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex.1995). Once the movant has established a right to summary judgment, the non-movant has the burden to respond to the motion and present to the trial court any issues that would preclude summary judgment. *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671, 678 (Tex.1979). When a summary judgment does not specify or state the grounds relied upon, the summary judgment will be affirmed on appeal if any of the grounds presented in the motion are meritorious. *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex.1989). Even if the judgment does state specific grounds

for its rendition, in the interest of judicial economy, we may consider other grounds the movant preserved for review and the trial judge did not rule on. *Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 627 (Tex.1996).

## Res Judicata

 *Res judicata*, also known by its more descriptive name of claim preclusion, prevents the relitigation of a claim or cause of action between the same parties that has been finally adjudicated in a prior suit by a court of competent jurisdiction. *Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 628 (Tex.1992). Application of the doctrine requires proof of the following elements: 1) a prior final judgment on the merits by a court of competent jurisdiction; 2) identity of parties or those in privity with them; and 3) a second action based on the same claims as were raised or could have been raised in the first action. *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 652 (Tex.1996). Claim preclusion prevents splitting a cause of action. *Id.* The policies behind the doctrine reflect the need to bring all litigation to an end, prevent vexatious litigation, maintain stability of court decisions, promote judicial economy, and prevent double recovery. *Id.*

 The related doctrine of collateral estoppel, or issue preclusion, prevents a party from relitigating an issue previously litigated and resolved by a prior judgment. In asserting that doctrine is applicable, Quantum cites our decision in *Rexrode v. Bazar*, 937 S.W.2d 614 (Tex.App.—Amarillo 1997, no writ), in which we pointed out the requirements that 1) the facts sought to be litigated were actually litigated in the prior action, and 2) the resolution of those facts were necessary to the prior judgment. *Id.* at 617. We disagree with Quantum's argument that the doctrine is applicable here. This is so because the facts concerning Bartkowiak's claim of retaliation were not fully litigated and the trial court's failure to state the grounds on which it granted the prior summary judgment makes it impossible to determine which factual resolutions were necessary to that judgment. *See Lawlor v. National Screen Service Corp.*, 349 U.S. 322, 327, 75 S.Ct. 865, 99 L.Ed. 1122 (1955).

The summary judgment in favor of Quantum addressed the following causes of action, retaliatory discharge, disability discrimination, blacklisting, intentional infliction of emotional distress, negligent infliction of emotional distress, and loss of parental consortium. In his motion for summary judgment, Girouard's argument that he was not a proper party was addressed to only two claims, retaliatory discharge and disability discrimination. With regard to those two claims, he argued he was not a proper party because only an employer could be liable on those types of actions. He also presented evidence that Bartkowiak's firing could not have been in retaliation for her worker's compensation claim because the termination was planned before her February 6, 1992 injury. In its order granting Girouard's motion, the trial court did not specify the grounds upon which it was based.

 Quantum's summary judgment on Bartkowiak's disability discrimination was not based on claim preclusion, so it is not relevant to her first issue. However, Quantum's judgment with regard to retaliatory discharge was based upon the claim preclusion doctrine. In this discussion, we bear in mind that in granting Girouard's summary judgment, the trial court did not state the basis for its ruling. If Girouard's judgment was granted because he was not a proper party, we agree that a judgment in favor of Quantum on that basis would not be proper because Quantum would be a proper party and the underlying claim was not litigated in the Girouard proceeding. *See Baker v. Smith*, 407 S.W.2d 4, 6 (Tex.Civ.App.—Fort Worth 1966, no writ) (holding *res judicata* is not applicable when the prior dismissal was not based on a ground that goes to the merits of the case). *See also Maxey v. Citizens Nat.*

*Bank of Lubbock,* 507 S.W.2d 722, 725 (Tex.1974) (Bank could not assert claim preclusion based upon prior judgments in favor of individual officers of the bank).

Quantum also argues that any liability it might have for retaliatory discharge would, of necessity, be derivative under the doctrine of *respondeat superior* and, because of the ruling in favor of Girouard, it can have no liability in a case in which its employee is not liable. We disagree. Nothing in Bartkowiak's pleading seeking recovery from Quantum asserts she is relying upon the doctrine of *respondeat superior.* The cases upon which Quantum relies in advancing this proposition are negligence cases in which the doctrine was specifically invoked to impute liability to the tortfeasor's employer. *See Baptist Mem. Hosp. Syst. v. Sampson,* 969 S.W.2d 945 (Tex.1998). Because Quantum rather than Girouard was Bartkowiak's employer, under Chapter 451 of the Labor Code, only Quantum could violate the prohibition against retaliatory discharge. The fact that Quantum could only act through its agents does not change the direct nature of Bartkowiak's claim against Quantum. That distinction is explicated by our supreme court in the *Maxey* case.

If, however, the Girouard judgment was granted on the basis that he established there was no genuine issue of material fact as to whether Bartkowiak's worker's compensation claim was a material factor in her being discharged, claim preclusion would be applicable. In that connection, Girouard had offered evidence that Quantum was reducing the size of its workforce at the location where Bartkowiak was working. There was evidence that the termination of several workers, including Bartkowiak, was proposed in late January 1992, at least a week before her work-related injury on February 6, 1992. In support of his motion, Girouard had ar-

gued this evidence was sufficient to establish that Bartkowiak's subsequent compensation could not have been a determining factor in her firing. Although Bartkowiak responded with evidence that the list of employees to be fired had not become fixed until after her compensable injury, which, she contended, was sufficient to present a fact question, summary judgment was rendered against her. Because she did not appeal, that judgment has now become final and we may not review whether the trial judge erred in granting it. To do so would be to conduct an impermissible collateral attack on the judgment. *See Ranger Ins. Co. v. Rogers,* 530 S.W.2d 162, 167 (Tex.Civ.App.—Austin 1975, writ ref'd n.r.e.).

Because Girouard's judgment could have been decided on the basis that her worker's compensation claim had nothing to do with her termination, that ground would satisfy the elements of claim preclusion as set out in the *Amstadt* case. Under this record, we cannot hold that the trial court erred in applying claim preclusion in rendering summary judgment for Quantum on the claim for retaliatory discharge. Bartkowiak's first issue is overruled.

### Sexual Harassment

As we noted above, in her second issue, Bartkowiak contends the trial court erred in dismissing her claim of sexual harassment because she failed to report the conduct allegedly giving rise to that claim in "accordance with [Quantum's] policy and applicable law." She argues that the trial court erred because there was a fact issue of whether or not Quantum had a sexual harassment policy in effect at the time.

The parties agree that the relevant statutory provisions are former Texas Revised Civil Statute article 5221k, § 5.01(1)[1] which followed the provisions of Title VII of the 1964 Civil Rights Act, 42 U.S.C.

---

1. Article 5221k (the previous Commission on Human Rights Act) was repealed and modified as chapter 21 of the Texas Labor Code. *See* Act of May 12, 1993, 73rd. Leg., ch. 269, § 1, 1993 Tex.Gen.Laws 990. (For current Code *see* Tex. Lab.Code Ann. §§ 21.001–405 (West 1996 & Supp.1998)).

§ 2000e–2(a)(1), and should be construed in conformity with the federal act. Both statutes prohibit discrimination against individuals with respect to "compensation or the terms, conditions, or privileges of employment" on the basis of, *inter alia,* the employee's sex. In *Meritor Savings Bank v. Vinson,* 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986), the Court described two categories of conduct that can constitute gender-based discrimination in violation of Title VII. The first, termed *quid pro quo,* occurs when a supervisor with authority to control terms, conditions, or privileges of a subordinate's employment demands sexual favors in return for a job benefit. *Id.* 477 U.S. at 65, 106 S.Ct. 2399. The Court found this type of conduct to be *explicit* discrimination. *Id.* The Court also recognized the potential for discrimination when sexually demeaning or offensive behavior created a hostile work environment. Because the Court found it "less obvious" that the latter type of behavior altered a term or condition of employment, it required proof that such harassment be "severe or pervasive" to be actionable. *Id.*

In *Burlington Industries, Inc. v. Ellerth,* 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998), the Court addressed a case in which an employee's indirect supervisor's conduct implied or threatened adverse employment action, but no such action was ever actually taken. The Court reiterated the standards explicated in *Meritor* and noted employers are typically only vicariously liable for *quid pro quo* harassment. *Id.* 118 S.Ct. at 2264–65. Although the Court categorized the conduct before it as falling under the "hostile environment" category, for which an employer's liability is typically based upon its own negligence, the Court went on to analyze whether the employer could still be liable under the law of agency. *Id.* 118 S.Ct. at 2265. In doing so, the Court found that sexual harassment is not within the course of the supervisor's

employment. It then went on to consider the effect of section 219(2)(d) of the Restatement (Second) of Agency [2] addressing liability for torts committed outside the scope of employment. It concluded that, to hold an employer liable in such instances, a "tangible employment action" would be required. *Id.* 118 S.Ct. at 2268. That type of action must be by someone in a supervisory capacity because ordinarily a co-worker is not in a position to dock another's pay, deny them a promotion, or demote them. A "tangible employment action" is an act of the employer. *Id.* 118 S.Ct. at 2269.

In additional explication, the Court said:

> An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with ... authority over the employee. When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages subject to proof by a preponderance of the evidence.... The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.

Bartkowiak contends that the second element of the affirmative defense is not applicable because a fact question exists as to whether Quantum provides any corrective opportunities by having a sexual harassment policy in place. Quantum responds that that question is not reached because Nelson, the alleged harasser, was not in a supervisory capacity over Bartkowiak. In her brief, Bartkowiak argues that both types of sexual discrimination,

---

**2.** That section provides in part:
(2) A master is not subject to liability for the torts of his servants acting outside the scope of their employment unless:

(D) the servant ... was aided in accomplishing the tort by the existence of the agency relation.

*i.e., quid pro quo* and hostile environment, were encompassed within her pleadings.

### Quid Pro Quo

■ Bartkowiak correctly asserts that Nelson was *a* supervisor. However, the relevant question was whether Nelson was *her* supervisor. She does not cite any evidence showing what influence or authority Nelson, a labor relations supervisor, had over her position. Her argument is that he threatened that non-compliance with his alleged demands would increase the likelihood that she would be fired. However, Nelson showed that he dealt with hourly employees and, under the evidence, Bartkowiak was a salaried employee. Nelson averred that Girouard was his supervisor and it is undisputed that Girouard was also Bartkowiak's supervisor.

In arguing that a question existed whether Nelson was in a supervisor capacity over her, Bartkowiak points to a statement in Nelson's affidavit that he performed some of Girouard's tasks in Girouard's absence. Even so, this is not only no evidence that Nelson was in a supervisory capacity over Bartkowiak, but is contrary to Bartkowiak's deposition testimony that Nelson was not her supervisor. Without any evidence of his supervisory authority over her, Bartkowiak may not maintain a sex discrimination *quid pro quo* sexual harassment claim against Quantum for Nelson's acts.

### Hostile Work Environment

■ Unlike *quid pro quo* harassment, liability for discrimination based upon a hostile work environment is ordinarily direct rather than vicarious. *See Burlington,* 118 S.Ct. at 2268. This is true because the elements of a hostile work environment claim are: 1) the employee belongs to a protected class; 2) the employee was subjected to unwelcome sexual harassment; and 3) the employer knew or should have known of the harassment and failed to take adequate remedial action. *Soto v. El Paso Natural Gas Co.,* 942 S.W.2d 671, 678 (Tex.App.—El Paso 1997, writ denied).

As we have noted, because the effect on the terms and conditions of a plaintiff's employment is less apparent, the Supreme Court has required the harassing conduct be "severe or pervasive." With regard to the elements of a hostile environment claim, it is undisputed that Bartkowiak was a member of a protected class. For purposes of this discussion, we will accept as true her assertion that she was sexually harassed because of her gender. We will also assume, arguendo, that the harassment was sufficiently severe or pervasive to affect a term, condition, or privilege of her employment. Thus, the decisive question we must now decide is whether Quantum conclusively negated the fifth element, namely Quantum's actual or imputed knowledge or failure to take action if it had such knowledge or if Quantum had established the affirmative defense articulated by the *Burlington* Court.

■ If the summary judgment evidence is sufficient to show as a matter of law that Quantum did not know or should have known of the improper conduct or, even if it knew, it had taken adequate remedial action, Bartkowiak could not have prevailed and the summary judgment was proper. Bartkowiak apparently argues that a failure by Quantum to conclusively establish the dissemination of a written discrimination policy precludes Quantum from negating the knowledge element of her suit. Parenthetically, while it may be relevant in deciding the knowledge element, the establishment of a written policy is not, in and of itself, an element in affirmative defense.

■ We disagree with Quantum's contention that it is "well settled precedent" that as a predicate to a claim for hostile work environment, a victim must have actually sought, and been denied, remedial action. In support of that argument, it solely relies upon *Jason v. Baptist Hospital,* 872 F.Supp. 1575 (E.D.Tex.1994). The

*Jason* court cited *Carmon v. Lubrizol*, 17 F.3d 791 (5th Cir.1994) which, in turn, cited *Jones v. Flagship Intern.*, 793 F.2d 714 (5th Cir.1986). However, the *Jones* court had actually set out the same requirements to establish a hostile work environment claim we set out above. Because an employer's knowledge could come from a source other than a formal complaint, it is clear from these cases that the pertinent element is whether the employer knew or should have known of the conduct, not whether a formal complaint has actually been filed pursuant to a formal policy.

Without citation to the record, Bartkowiak asserts that she did "report the problem to Nelson ... by her conduct and verbal refusal of his advances." She argues this was sufficient because Nelson was designated as "one of the people" to whom sexual harassment complaints could be made. She asserts the facts here are similar to those present in *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993), in which the employee was permitted to recover after she complained to the harassing superior. However, in *Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998), the same Court noted that the question of the employer's knowledge was not in issue in the Harris case because the person accused of harassment in that case was the president of the corporate employer who, in effect, was the corporation's proxy. *Id.* 118 S.Ct. at 2284.

In contrast, Nelson, the person accused of misconduct was, at best, a mid-level manager. We also note that at the same time Bartkowiak argues her complaint to Nelson was sufficient because he was the person designated to receive such complaints, she argues that there was no such policy in place.

Bartkowiak offered no explanation why she failed to voice a complaint to Girouard or anyone else at Quantum. The evidence shows that it was Quantum's practice to timely investigate sexual harassment complaints and to take remedial action. The first event concerned a complaint from an employee named Donna Greer made in response to an inappropriate comment Nelson made in a group of people.[3] In response to the complaint, Girouard, who was Nelson's supervisor, reprimanded him and lowered his performance review. A second event occurred in 1993 after Bartkowiak's employment, and concerned an apology by Nelson to his secretary which was apparently botched. Because of this, Quantum requested, and obtained, Nelson's resignation. In *Carmon*, the court was presented with evidence which was virtually identical to that in this record. Because the employer had twice investigated claims of sexual harassment and taken remedial measures, the Fifth Circuit court affirmed the dismissal of claims against the employer for sexual harassment in a hostile work environment. *Id.*

Although *Carmon* was decided before the *Burlington Industries* case, it illustrates well the affirmative defense again recognized and explicated in *Burlington Industries*. That defense is established by proof that an employer exercised reasonable care to prevent, and to correct promptly, any sexually harassing behavior, and that the complaining employee failed to take advantage of the preventive or corrective opportunities provided by the employer. *Burlington*, 118 S.Ct. at 2270.

The summary judgment evidence sufficiently establishes Quantum's affirmative defense to Bartkowiak's sexual harassment claim. Bartkowiak's second issue is overruled.

Our action on Bartkowiak's first two issues foreshadows our disposition of her third issue. In that issue, she challenges the trial court's dismissal of the claims she filed on behalf of her minor children for loss of parental consortium. In dismissing those claims, the trial court found that "Quantum bears no underlying liability." Her argument under this issue reiterates

---

3. Nelson was unsure of the date of the event, but testified that it was "probably" 1992.

her argument supporting the first two issues. Because we have overruled those two issues, there is no basis for the third issue and it is overruled.

In summary, all of Bartkowiak's issues are overruled and, there being no reversible error, the judgment of the trial court is affirmed.